Pouwels and another, Plaintiffs and Respondents, vs. Cheese Makers Mutual Casualty Company, Defendant and Appellant: Ginsberg, Interpleaded Defendant and Respondent.

*May 5—June 7, 1949.*

For the appellant there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondents there was a joint brief by *Cohen, Parins & Cherney, Meyer M. Cohen, Berk & Jarstad,* and *Bernard Berk,* all of Green Bay, attorneys for the Pouwels, and by *Everson, Ryan, Whitney & O'Melia,* and *E. L. Everson,* all of Green Bay, attorneys for Al Ginsberg, and oral argument by *Bernard Berk.*

MARTIN, J.    The policy issued by the defendant, Cheese Makers Mutual Casualty Company, named "Al Ginsberg and/or Green Bay Auto Distributors, Inc.," as the named assured, and listed the business of the assured as "auto distributor."    At the time the policy was issued, and at the time of the accident, Ginsberg was engaged in the automobile business, the business (described by Ginsberg as "automobiles, garage, and used cars") being conducted by a corporation known as Green Bay Auto Distributors, Inc.    Ginsberg's Buick was used by him in the above business and for pleasure.    At the time of the accident, the Buick was not being driven on garage business.    See *Pouwels v. Ginsberg* (1944), 245 Wis. 45, 13 N. W. (2d) 448.

Ginsberg ordered from the defendant, through one Ferslev, an insurance solicitor, insurance coverage that would cover his personally owned Buick as well as provide garage liability insurance.    He received pursuant to his order the policy in question.

First of all, we will consider the question as to whether Ferslev was the agent of the Cheese Makers Mutual Casualty Company.

Sec. 209.05, Stats., provides:

"*Who are agents.*    Every person or member of a firm or corporation who solicits insurance on behalf of any insurance company or person desiring insurance of any kind, or transmits an application for a policy of insurance, other than for himself, to or from any such company, or who makes any contract for insurance, or collects any premium for insurance,

or in any manner aids or assists in doing either; or in transacting any business of like nature for any insurance company, or advertises to do any such thing, shall be held to be an agent of such company to all intents and purposes, unless it can be shown that he receives no compensation for such services. This section shall not apply to agents of town mutual fire insurance companies."

Mr. Ferslev had his own insurance business since 1931. He brokered his casualty and general insurance through the J. P. Mayhugh Agency, but had a direct contract with a company for life insurance. He advertised and held himself out to the public as an insurance agent. He received the oral application for insurance from Mr. Ginsberg and transmitted it to J. P. Mayhugh, a general agent for the Cheese Makers Casualty Company. The policy of insurance was delivered to Al Ginsberg by Ferslev. Mr. Ferslev collected the premium for the policy from Mr. Ginsberg, retained a portion of the premium as his fee, and transmitted the balance of the premium to the defendant-appellant through its general agent, J. P. Mayhugh.

Where an independent insurance salesman does business with an authorized insurance agency, accepts a portion of the insurance premium, and pays a portion thereof to the agency, the independent salesman is an agent under sec. 209.05, Stats.

The evidence is clear that Ferslev was the agent of Cheese Makers Mutual Casualty Company in its transaction with Al Ginsberg. See *McKinnon v. Massachusetts Bonding & Ins. Co.* (1933), 213 Wis. 145, 148, 149, 250 N. W. 503.

The next question is whether there is sufficient evidence to sustain the finding of the court that the policy of insurance did not conform to the intent of the parties and should be reformed.

The testimony of Ferslev and Ginsberg clearly shows that it was the intention of Ginsberg to obtain, and the company agent to furnish, a policy of insurance that would in effect pro-

vide coverage on Ginsberg's Buick which would be as broad as that of the ordinary policy issued on an individual car, and also provide the usual coverage afforded by a garage liability policy on the company's cars.

When Mr. Ginsberg first made his request for a policy combining the personal and garage risks, Mr. Ferslev had some doubts as to his ability to deliver such a contract. After making inquiries from J. P. Mayhugh, general agent for the Cheese Makers Mutual Casualty Company, he returned to Ginsberg and told him that the risks could be combined in one policy. When he delivered the policy, he told Ginsberg that he was protected. Al Ginsberg was designated as a named insured.

Mr. Mayhugh's testimony does not corroborate in full the testimony of Ferslev. Mr. Mayhugh testified that Mr. Ferslev merely asked for the issue of a garage liability policy. However, he testified further that he made application in two stock companies for the type of insurance that Ferslev requested and that both applications were recalled, and that the Cheese Makers Mutual Casualty Company, who accepted business that had been turned down by other companies, would be the only company that would issue the type of insurance wanted. It was further testified that Mayhugh could write and issue a garage liability policy upon receipt of a rate. The policy in issue, however, had to be sent to Madison, and part of the policy was signed by a Madison representative of the company in its home office. This evidence strongly indicates that something other than a mere garage liability policy was involved.

There is no evidence or proof of any notice to Al Ginsberg of any limitation of the authority of Mr. Ferslev. The application for insurance was oral. Ferslev intended to and undertook to deliver the contract of insurance combining the risks as requested by Ginsberg, and the Cheese Makers Mutual

Casualty Company was fully bound by the agreement to provide such combined risks. See *Anderson v. Indiana Liberty Mut. Ins. Co.* (1934), 214 Wis. 384, 253 N. W. 405.

It is well established that when clear and satisfactory evidence demonstrates that through inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties. See 29 Am. Jur., Insurance, p. 237, sec. 241; *Wisconsin Auto Racing Asso. v. Home Ins. Co.* (1934), 216 Wis. 321, 257 N. W. 7; *Fountain v. Importers & Exporters Ins. Co.* (1934), 214 Wis. 556, 252 N. W. 569; *Schmidt v. Prudential Ins. Co.* (1940), 235 Wis. 503, 292 N. W. 447.

The final question is whether the defendant Casualty Company has lost the right to assert the defense of noncoverage.

In July, 1942, the plaintiffs-respondents commenced an action against Ginsberg and Cheese Makers Mutual *Insurance* Company. Mr. Lehner, by notice of retainer served July 16th, appeared for both defendants and submitted a joint answer on behalf of both defendants. A special verdict in favor of the plaintiffs was returned November 27, 1942. During the trial it developed that the Cheese Makers Mutual *Insurance* Company was a fire insurance company associated with the Cheese Makers Mutual *Casualty* Company, the defendant in the present case. Upon the representation of Mr. Lehner that Cheese Makers Mutual *Insurance* Company was not a proper party, the action against said defendant was dismissed and judgment was entered against Al Ginsberg on June 14, 1943. Between that date and September 15, 1943, the defendant-appellant had decided to appeal from the judgment since on that date the company obtained an order extending the time for settlement of the bill of exceptions. Throughout these proceedings Mr. Ginsberg had been represented by Mr. Lehner, the attorney employed by the Cheese Makers Mutual *Casualty* Company, the defendant-appellant. The company paid Mr. Lehner for

all his services, including his services on appeal. There had been no denial of liability, no notice of reservation of rights, and no attempt of any kind had been made by the company to reserve any of its rights under the policy.

The insurance company by its conduct waived its right to assert the policy defense of noncoverage. See Anno. 81 A. L. R. 1327; *Wisconsin Transportation Co. v. Great Lakes Cas. Co.* (1942), 241 Wis. 523, 6 N. W. (2d) 708; *Hickey v. Wisconsin Mut. Ins. Co.* (1941), 238 Wis. 433, 300 N. W. 364.

On September 22, 1943, the Cheese Makers Mutual Casualty Company obtained Ginsberg's signature to the following:

"Notice and acknowledgment of nonwaiver of rights. It is hereby understood and acknowledged by and between the Cheese Makers Mutual Casualty Company, of Madison, Wisconsin, and Al Ginsberg, and/or Green Bay Auto Distributing Company, that any action taken by the said insurance company, in investigating and/or adjusting or attempting to adjust, and/or defending any claim and/or litigation growing out of any accident involving Al Ginsberg on his automobile and one Lewellyn Pouwels, which occurred on Washington street, Green Bay, on or about March 14, 1942, shall not be construed as a waiver of the right of the said company to deny liability at any time under any policy or policies of insurance."

The question of the signing of the waiver by Ginsberg is immaterial. It would serve no purpose to discuss it for the reason that the contract was subject to modification, and the reformation of the contract is herein affirmed by this court. Ginsberg waived no rights as to any of the provisions of the contract as modified and reformed and, therefore, it is unnecessary to discuss the question of waiver.

*By the Court.*—Judgment affirmed.