UTICA MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

KLEIN & SON, INC., a Wisconsin corporation, Klein Insurance Group, a Wisconsin corporation, and Edward Tanke, Defendants-Respondents,†

The AMERICAN INSURANCE COMPANY a/k/a Fireman's Fund Insurance Companies, a foreign insurance corporation, Defendants.

Court of Appeals

*No. 89-1342. Submitted on briefs November 11, 1989.—Decided August 2, 1990.*

(Also reported in 460 N.W.2d 763.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *L. E. Sheehan* of *Moen, Sheehan, Meyer & Henke, Ltd.* of La Crosse.

For the defendants-respondents the cause was submitted on the briefs of *Thomas M. Fitzpatrick* of *Fitzpatrick, Smyth, Dunn & Fitzpatrick* of La Crosse.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.  Utica Mutual Insurance Company appeals from a summary judgment declaring that its errors and omissions policy covers a claim against the Klein Insurance Group. Utica Mutual denied coverage because Klein failed to disclose the potential claim when it applied to Utica Mutual for errors and omissions insurance. Klein contends that Minnesota law controls and that under Minnesota law, Utica Mutual waived its right to deny coverage. It argues that, in any event, Utica Mutual is barred by waiver and estoppel from asserting its coverage defense.

We conclude that Wisconsin law applies and that the policy clause providing that the policy is issued in reliance upon the truth of applicant's representations is a coverage clause going to the scope of coverage assumed. Under *Shannon v. Shannon,* 150 Wis. 2d 434, 454, 442 N.W.2d 25, 34 (1989), Utica Mutual could not waive the coverage clause and is not estopped from asserting its coverage defense. We therefore reverse the summary judgment and direct the circuit court to enter summary judgment declaring that Utica Mutual's policy does not cover the claim.

## BACKGROUND

Klein's alleged error was failing to provide a bond requested by Joel Twaiten sufficient to protect him from personal liability for the continued operation of a Minnesota business which Twaiten sold. On November 22, 1982, Twaiten demanded that Klein pay an incurred loss. Klein forwarded a copy of the demand to its errors and omissions carrier, Fireman's Fund Insurance Companies, asking that Fireman's Fund accept the demand letter as notice of a potential claim. Fireman's Fund set up a file on the potential claim. On June 20, 1983, Fireman's Fund requested an update from Klein on the Twaiten claim. On June 28, 1983, Klein responded that it believed that Twaiten "will most likely sue [another insurer] before they take action against our agency."

Thereafter, Klein changed carriers. On October 1, 1985, Klein applied to Utica Mutual for errors and omissions insurance. Question 13 of the application inquired whether any claims had been made or incidents had arisen against the agency during the past five years. Klein answered "yes" and gave the details of another potential claim. Klein did not list the Twaiten claim. Question 14 asked: "Is the agency aware of any circumstances or any allegation or contentions of any incident which may result in any claim being made against the agency, their predecessors in business or any present or past partners?" Klein answered "no."

On July 9, 1986, Twaiten served Klein with a summons and complaint in an action on the Twaiten claim begun against Klein in Minnesota. Klein mailed a copy of the summons and complaint to Fireman's Fund and to Utica Mutual.

Upon receiving the suit papers, Utica Mutual retained Minnesota counsel to represent Klein. When

Utica Mutual learned that Klein had previously notified Fireman's Fund of Twaiten's potential claim, it tendered the defense of the action to Fireman's Fund. It thereafter continued to tender defense of the action to Firemen's Fund.

On April 7, 1987, Fireman's Fund denied coverage. On May 8, 1987, Utica Mutual denied coverage because of Klein's application misrepresentation. Prior to that date, Utica Mutual had not informed Klein that it intended to assert a policy defense. When it denied coverage, Utica Mutual advised Klein that it was filing a declaratory judgment action in Wisconsin to determine the issue of coverage.

## I.

## WISCONSIN OR MINNESOTA LAW?

Klein contends that this case is controlled by Minnesota law. It argues that under Minnesota law, Utica Mutual waived its right to deny coverage. *Nikkari v. Jackson,* 33 N.W.2d 36 (Minn. 1948). We conclude that Wisconsin law controls.

In *Urhammer v. Olson,* 39 Wis. 2d 447, 450, 159 N.W.2d 688, 689 (1968), the Wisconsin Supreme Court adopted the "grouping-of-contacts" approach for resolving conflicts questions raised as to a disputed contract. In *Haines v. Mid-Century Ins. Co.,* 47 Wis. 2d 442, 446-47, 177 N.W.2d 328, 330 (1970), the Wisconsin Supreme Court relied on the Restatement (Second) of Conflict of Laws, sec. 188, as the "embodiment" of the "grouping-of-contacts" approach. Section 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has

the most significant relationship to the transaction and the parties under the [choice-of-law] principles stated in sec. 6. [1]

(2)   In the absence of an effective choice of law by the parties (see s. 187), the contacts to be taken into account in applying the principles of sec. 6 to determine the law applicable to an issue include:

(a)   the place of contracting,

(b)   the place of negotiation of the contract,

(c)   the place of performance,

(d)   the location of the subject matter of the contract, and

(e)   the domicil, residence, nationality, place of incorporation and place of business of the parties.

---

[1]Restatement (Second) of Conflict of Laws sec. 6 provides as follows:

(1)   A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2)   When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a)   The needs of the interstate and international systems,

(b)   the relevant policies of the forum,

(c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d)   the protection of justified expectations,

(e)   the basic policies underlying the particular field of law,

(f)   certainty, predictability and uniformity of result, and

(g)   ease in the determination and application of the law to be applied.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3)   If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in secs. 189–199 and 203.

As to this section, the *Haines* court stated:

This section, in the absence (as here) of an agreement between the parties of their choice of law, permits a functional conflicts analysis under which the method is not to count contacts but rather to consider which contacts are the most significant and to determine where those contacts are found.

*Haines,* 47 Wis. 2d at 447, 177 N.W.2d at 330–31.

The contract between Klein and Utica Mutual is contained in an errors and omissions policy, a form of casualty insurance. As to such contracts, the Restatement says:

The validity of a contract of . . . casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the [choice-of-law] principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws sec. 193 (1971).

Klein argues that Minnesota law should be applied to determine that Utica Mutual waived its right to deny

coverage by assuming defense of the action against Klein. Klein contends that Minnesota has more significant contacts with Klein and Twaiten than Wisconsin because Klein does business in Wisconsin and Minnesota, was sued by Twaiten in Minnesota, and Utica Mutual retained a Minnesota law firm to defend Klein.

However, this is not a lawsuit between Twaiten and Klein. As between Utica Mutual and Klein, the location of the insured risk is in Wisconsin. "An insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be during at least the major portion of the insurance period." *Id.*, comment b at 611. "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *Id.*

The risk insured by Utica Mutual is an error or omission by Klein in conducting its business. This activity has its principal location in Klein's offices in Wisconsin. In accordance with the Restatement principles, we give greater weight to this fact than any other single contact in determining that Wisconsin law applies. Using the factors set forth in sec. 188 of the Restatement, we conclude that Wisconsin has the more significant contacts. The application was completed and signed in Wisconsin by an officer of Klein. The policy declarations were countersigned at Mayville, Wisconsin, by an authorized representative of Utica Mutual. Klein is domiciled in and its place of business is in Wisconsin. We therefore conclude that whether Utica Mutual waived its right to deny coverage to Klein is controlled by Wisconsin law.

## II.

### RIGHT TO DENY COVERAGE

Utica Mutual contends that its policy does not cover Twaiten's claim because the claim would have been excluded had Klein revealed the existence of the potential claim as required by Utica Mutual's application for errors and omissions coverage. The policy provides:

> 17. *Application:* By acceptance of this policy the insured agrees that the statements in the application are his representations, that *this policy is issued in reliance upon the truth of such representations,* and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance. [Emphasis added.]

Klein argues that Utica Mutual seeks to reform the insurance contract and is barred by waiver and estoppel. We reject Klein's reformation argument for the simple reason that Utica Mutual does not ask that the contract be reformed. We conclude that Utica Mutual may assert a policy coverage defense without reforming the contract.

The waiver and estoppel issues are controlled by *Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25.[2] In *Shannon,* the insurance policies excluded coverage of a family member. The insureds and the injured party argued that the insurer had waived the family-member exclusion clauses by, among other acts, designating an attorney to

---

[2]Although waiver and estoppel are conceptually different doctrines, the terms are frequently used interchangeably or in tandem when discussing an insurer's assertion of policy defenses. The *Shannon* court held that neither waiver nor estoppel can enlarge insurance coverage. 150 Wis. 2d at 454, 455 n.5, 442 N.W.2d at 35.

represent the insured. The court held that, as a matter of law, an insurer cannot waive a coverage clause of either an inclusionary or exclusionary nature going to the scope of coverage assumed, *id.* at 454, 442 N.W.2d at 34, nor can estoppel be used to enlarge coverage. *Id.* at 455 n.5, 442 N.W.2d at 35. However, a forfeiture clause furnishing a ground for forfeiture of coverage or defeasance of liability or a no-action clause can be waived. *Id.* at 454, 442 N.W.2d at 34. Therefore, it is critical to determine whether a policy condition or term is a coverage clause of either an inclusionary or exclusionary nature going to the scope of coverage assumed, or a forfeiture clause furnishing a ground for the forfeiture of coverage or defeasance of liability. *Id.* at 453–54, 442 N.W.2d at 34.

"What terms, conditions and provisions in a policy may be considered as forfeiture clauses and what language is considered essentially coverage is not always free from doubt." *Id.* at 451, 442 N.W.2d at 33 (quoting *Ahnapee & Western Railway Co. v. Challoner*, 34 Wis. 2d 134, 142, 148 N.W.2d 646, 650 (1967)). Neither the type of insurance policy nor the language of the policy necessarily controls. *Id.*

> As a general rule, conditions and terms, either of an inclusionary or exclusionary nature in the policy, go to the scope of the coverage or delineate the risks assumed, as distinguished from conditions and terms which furnish a ground for the forfeiture of coverage or defeasance of liability . . . .. "While waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company

should not be required by waiver and estoppel to pay a loss for which it charged no premium . . .."

*Id.* at 451–52, 442 N.W.2d at 33.

We conclude that paragraph seventeen of the policy is a coverage clause of an exclusionary nature, going to the scope of coverage assumed. Paragraph seventeen of the policy provides that the policy is issued in reliance on the truth of the applicant's representations. Questions thirteen and fourteen of the application make clear that the insurer does not extend coverage to present or potential claims made or which have arisen within five years prior to application. Because Klein's representations were untruthful, the policy was not "issued" as to Twaiten's potential claim. Twaiten's claim was never covered under the policy. Therefore, it was not necessary that Utica Mutual reform the contract to exclude the Twaiten claim.

The principle underlying *Shannon* is that "[i]nsurance contracts cannot be created by estoppel." *Maryland Casualty Co. v. Industrial Comm'n.,* 230 Wis. 363, 373, 284 N.W. 36, 40 (1939). *Fitzgerald v. Milwaukee Auto. Ins. Co.,* 226 Wis. 520, 277 N.W. 183 (1938), illustrates the principle. In *Fitzgerald,* the insurer provided temporary coverage. After the insured had obtained other coverage, an action was brought against the insured for damages caused by his acts which would have been covered by the temporary insurance. The original insurer participated in the insured's defense. The injured plaintiff argued that the insurer was therefore estopped from asserting that the loss was not within the terms of the contract. The court held, however, that there was no agreement on the part of the insurer to protect the insured from liability and such agreement could not be created by the insurer's assistance in the defense of the insured.

In *Kamikawa v. Keskinen,* 44 Wis. 2d 705, 172 N.W.2d 24 (1969), the court refused to apply estoppel to bar the insurer from denying the issuance of a parol contract of insurance. The former insured claimed that the company was estopped to deny coverage because its agent represented that the insured would be covered if the insured had mailed the premium. The court said: "The doctrine of estoppel does not apply to this case because its usage would be directed to the creation of a contract of insurance. This court has specifically declined to extend the doctrine to such situations." *Id.* at 711, 172 N.W.2d at 27. The court quoted sec. 9090 of Appleman, *Insurance Law and Practice,* where it is stated: "Insurance contracts cannot be created by estoppel. That doctrine cannot be invoked by an insured to create a primary liability of the insurer for which all elements of a binding contract are necessary." (Footnotes omitted.)

Appleman states that despite the lip service given to the rule that insurance contracts cannot be created by estoppel, the courts, in fact, frequently do extend the coverage of a policy by the application of waiver or estoppel. 16B Appleman, *Insurance Law and Practice* sec. 9090 at 576 n.*. Appleman notes that the rule has been referred to as a "majority rule" that is eroding. 16B Appleman, sec. 9090 (Supp. 1990) (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 682 P.2d 388 (Ariz. 1984)).

The "majority rule" has not been applied without exception by the Wisconsin court. In *Pouwels v. Cheese Makers Mut. Casualty Co.,* 255 Wis. 101, 107, 37 N.W.2d 869, 872 (1949), upon which Klein relies, the court held that the insurer by its conduct had waived its right to assert a noncoverage policy defense. The company represented the insured in an action against the insured, paid

the litigation expenses, did not deny liability, and made no attempt to reserve any of its rights under the policy. The *Shannon* court distinguished *Pouwels* on the grounds that the *Pouwels* court did not discuss the exclusion-nonwaiver rule and did not discuss whether the insurer based its noncoverage argument on an exclusion provision or a forfeiture provision. *Shannon,* 150 Wis. 2d at 453–54 n.4, 442 N.W.2d at 34.

The *Pouwels* court declined to address the waiver issue, finding it unnecessary in light of its holding that the insurance contract did not fully or correctly set forth the parties' agreement. The court reformed the contract in equity to express the actual agreement of the parties. *Pouwels,* 255 Wis. at 107, 37 N.W.2d at 872. Similarly, *Darner Motor Sales,* the Arizona decision which describes the majority rule as eroding, was a case in which there was a question of fact as to whether the insurance contract expressed the agreement of the parties. Appleman states that "[t]o constitute an estoppel creating coverage . . . misrepresentation must be made before or at the inception of the contract, not after a loss." 16B Appleman, sec. 9090 (Supp. 1990) (citing *Roseth v. St. Paul Property and Liab. Ins. Co.,* 374 N.W.2d 105 (S.D. 1985)). Thus, it appears that the perceived erosion of the majority rule is simply a misapplication of estoppel and waiver to situations in which through misrepresentation, inadvertence, accident or mistake, the terms of a contract of insurance are not fully or correctly set forth in the policy.

Klein's reliance on *Pouwels* is misplaced. First, the supreme court has expressly stated that *Pouwels* is of "limited instructive value" in determining whether a policy clause is an exclusion provision or a forfeiture provision. *Shannon,* 150 Wis. 2d at 453–54 n.4, 442

N.W.2d at 34. Second, the *Pouwels* court's finding of waiver was not necessary to its decision.

We conclude that the facts of this case bring it squarely within the *Shannon* decision. The reliance-on-representations clause is a coverage clause which is not subject to waiver or estoppel. The "erosion" of the majority rule, if it exists, has no effect in this case because there is no claim that Utica Mutual, at the inception of the contract, made any misrepresentation to Klein as to coverage.

## III.

## DID KLEIN FAIL TO DISCLOSE TWAITEN CLAIM?

Klein claims that there is a factual dispute as to whether it misrepresented its claims history when it answered questions thirteen and fourteen of the insurance application. If there is a disputed fact which is material, summary judgment cannot be awarded. *Hoeft v. United States Fire Ins. Co.*, 153 Wis. 2d 135, 143, 450 N.W.2d 459, 462 (Ct. App. 1989). However, questions of insurance coverage may be decided on motions for summary judgment. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). Summary judgment was appropriately used to determine whether Utica Mutual's policy covers the Twaiten claim.

We conclude that the trial court should have granted summary judgment to Utica Mutual. The facts surrounding the Twaiten claim are undisputed. Klein knew that in 1982 Twaiten had asserted a claim against it. Its answers to questions thirteen and fourteen of the

application were, therefore, false. Twaiten had made a claim against Klein during the five years preceding Klein's application to Utica Mutual. The fact that the claim "dissipate[d] and apparently die[d]" by October 1, 1985, as Klein argues, does not affect the undisputed fact that the claim had been made. Klein was aware of circumstances and allegations of an incident which could result in a claim being made against Klein. Klein's subjective belief as to Twaiten's intention with respect to his potential claim was irrelevant. Klein agreed that the policy issued by Utica Mutual was issued in reliance upon the truth of its representations in its application. Because those representations were untrue, Klein has no legal or factual basis upon which to demand that Utica Mutual cover the Twaiten claim. We therefore reverse the grant of Klein's motion for summary judgment and direct the trial court to enter summary judgment on Utica Mutual's motion declaring that Utica Mutual's policy does not cover the Twaiten claim.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment on Utica Mutual's motion for summary judgment.