Dawn L. MAXWELL, Plaintiff,

v.

HARTFORD UNION HIGH SCHOOL DISTRICT and
Hartford Union High School Board of Education,
Defendants-Third-Party Plaintiffs-Appellants,

v.

COMMUNITY INSURANCE CORPORATION,
Third-Party Defendant-Respondent.†

Court of Appeals

*No. 2009AP2176. Submitted on briefs March 19, 2010.
—Decided August 25, 2010.*

2010 WI App 128

(Also reported in 791 N.W.2d 195.)

† Petition For Review granted 2/8/11.

654

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. ANDERSON, J. The Hartford Union High School District and Hartford Union High School Board

of Education (collectively, the District) appeal from summary judgment granted to Community Insurance Corporation (CIC) declaring that it did not owe the District coverage for Dawn L. Maxwell's breach of contract lawsuit. The District contends that CIC, in assuming full dominion and control over the defense of the lawsuit, without a reservation of rights, is estopped from denying coverage after it lost the case. We agree. When an insurer forgoes a reservation of rights and exclusively controls the defense of a lawsuit, obtaining a result to the detriment and prejudice of the insured, it is barred from denying coverage. Therefore, we reverse.

FACTS

¶ 2. In 2007, the District gave notice to Maxwell that for budgetary reasons it was terminating her contract as director of special ed/pupil services at the end of the 2006–07 school year. Since Maxwell had a contract that included the 2007–08 school year, she filed a breach of contract action against the District. At the time, the District carried a public entity liability policy issued by CIC and administered by Aegis Corporation.

¶ 3. After being served, the District's director of business services, Jerry Dudzik, contacted Kim R. Hurtz, vice president of sales for Aegis. Hurtz was the District's contact for claims or potential claims but did not make any decisions as to coverage of claims. Hurtz told Dudzik that "CIC would provide a defense to the *Maxwell* lawsuit but that CIC would only hire an attorney from CIC's approved list." Hurtz referred Dudzik to Brian J. Knee, litigation manager for Aegis. In an affidavit, Knee stated:

> 7. Ms. Maxwell's Complaint contained the potential for different types of damages, some of which were

656

covered by the Policy and some of which were not. Accordingly, CIC provided the School District with a defense as to the *Maxwell* Complaint, consistent with Wisconsin law.

8. Upon notice of the *Maxwell* claim from the School District, I had an initial conversation with Jerry Dudzik. In that conversation, I advised Mr. Dudzik that CIC would provide a defense to the *Maxwell* lawsuit, but that CIC would only hire an attorney from CIC's approved list. I advised Mr. Dudzik that CIC would pay for the defense, and if attorney fees were awarded to the plaintiff, CIC would pay for that as well. I advised Mr. Dudzik that if Attorney Mohr[1] represented the School District in the matter, CIC would not pay the defense costs because Mr. Mohr was not on CIC's approved list. Finally, I advised Mr. Dudzik that CIC would not reimburse the School District for Attorney Mohr's attorney's fees.

9. At no time in my conversation with Mr. Dudzik did we talk about "coverage" of any damages that could result for the lawsuit. In fact, our conversation occurred before the School Board hearing which resulted in Ms. Maxwell's termination. Therefore, at the time of my conversation with Mr. Dudzik, the nature and extent of the alleged damages were not clear.

Without issuing a reservation of rights letter, Attorney Alan Levy of Lindner & Marsach, S.C., was hired by Aegis on behalf of CIC to represent the District.

¶ 4. In ruling on a series of partial summary judgment motions brought by Maxwell, first, on June 11, 2008, the circuit court found the District was liable for breach of Maxwell's employment contract. Next, on September 8, 2008, the court awarded Maxwell com-

---

[1] Attorney James W. Mohr, Jr., of Mohr & Anderson, LLC. At the time, Mohr served as general counsel for the District.

pensatory damages of $103,824.22 in salary and benefits but rejected her request for attorney fees of $44,672.60.

¶ 5. Shortly after the June 11, 2008 determination of liability, Dudzik wrote to Knee demanding a new attorney because the District believed that, based on Knee's representation that the damages were not covered, Levy had a conflict of interest. While disputing whether there was a conflict of interest, Knee agreed to appoint the District's current general counsel to replace Levy.

¶ 6. On July 24, 2008, Mohr emailed Knee claiming that CIC was obligated to pay the damages that might be assessed by the circuit court. Knee responded, asserting that the CIC policy issued to the District contained a clause specifically excluding coverage for amounts due under a performance contract and for lost wages and benefits.[2] Knee invoked a series of Wisconsin cases to support his assertion that a "coverage clause" cannot be waived nor defeated through estoppel. He ended his response by stating that while CIC would not

---

[2] The exclusion provides:

**SECTION V — EXCLUSIONS**

This policy does not apply to:

. . . .

D. Any liability for:

1. Any amount actually or allegedly due under the terms of any payment or performance contract or agreement, or

2. for that part of any award or settlement which is, or reasonably could be deemed to be, compensation for loss of salary or fringe benefits of your employee(s) . . . .

pay for any liability attributed to the District, it would continue to represent the District.

¶ 7.   The District reacted to CIC's denial of coverage by seeking leave to file a third-party complaint, which the circuit court granted. In the third-party complaint, the District sought a declaratory judgment that the policy provides coverage and CIC was barred from asserting coverage defenses and policy limit defenses. A flurry of motions resulted in a hearing on the District's motion for summary judgment and CIC's motion to dismiss the third-party complaint for failure to state a claim and for a declaration that there is no coverage under the terms of the insurance policy.

¶ 8.   In a thoughtful decision, the circuit court identified the critical issue as "whether, regardless of [the exclusion of coverage] Community's conduct has created coverage where none would otherwise exist." The court recognized:

> There is no question but that a split of authority exists as to whether based on waiver, estoppel, negligence, failure to disclaim, or substantial prejudice, an insurer's conduct can create coverage where none otherwise exists. It is interesting to note that the disagreement among appellate courts has been described by Appleman as an "eroding majority rule" of no coverage, by the Wisconsin Court of Appeals as a "misapplication of estoppel and waiver." *Utica Mutual Insurance Company v. Klein & Son,* 157 Wis. 2d [552, 564, 460 N.W.2d 763 (Ct. App. 1990)], and by the Illinois Court of Appeals as an "emerging trend" towards finding coverage, *Nationwide Mutual Insurance Company v. Filos,* 285 Ill. App. 528, 535 (Ct. App. 1996).

¶ 9.   Ultimately, the circuit court elected to follow "the latest Wisconsin Supreme Court decision dealing with the subject of insurance coverage by waiver or

estoppel, namely *Shannon v. Shannon*[, 150 Wis. 2d 434, 442 N.W.2d 25 (1989)]."

> In applying *Shannon,* this court rules *regardless* of Hartford's claim that Community (1) assured Hartford that coverage existed, (2) failed to expressly reserve its right to disclaim coverage, and (3) prejudiced Hartford's rights by waiting until after an adverse decision on liability to disclaim coverage, there is simply no coverage for Maxwell's salary and benefits claims. Hartford did not pay for coverage of employee salary or fringe benefits claims, and under existing Wisconsin law, Community's conduct cannot be determined to create such coverage.

¶ 10. The District appeals.

STANDARD OF REVIEW

■■

¶ 11. We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *Mullen v. Walczak,* 2003 WI 75, ¶ 11, 262 Wis. 2d 708, 664 N.W.2d 76. Summary judgment is appropriate if the pleadings and other information on file show there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; WIS. STAT. § 802.08(2) (2007–08). Here, the pertinent facts are undisputed, leaving only an issue of law for our consideration. Specifically, this case involves the question of whether CIC's exercise of dominion over the underlying lawsuit, without a reservation of rights, operates to provide coverage to the District. This question is a question of law, which this court decides independently, without deference to the decision of the circuit court. *See Shannon,* 150 Wis. 2d at 450.

BACKGROUND

¶ 12. A little background on the law of contesting coverage under an insurance policy is helpful in understanding our discussion that follows. In *Grube v. Daun*, 173 Wis. 2d 30, 47, 71, 496 N.W.2d 106 (Ct. App. 1992), Secura Insurance Company refused to provide a defense or coverage to its insured, who was being sued for environmental contamination of land the insured owned when the land was befouled with gasoline. Secura argued that it owed no duty to defend because certain policy exclusions applied which denied coverage to the insured's own property. *Id.* at 71. The insured filed a third-party complaint against Secura, demanding that it provide him with a defense and insurance coverage for damages in an action brought by the parties required to remediate the gasoline contamination. Brief and Appendix of Defendant Louis Achter at 6, *Grube*, 173 Wis. 2d 30.

¶ 13. We held that Secura had a duty to defend the entire action against its insured even if some allegations fell outside of the scope of the insurance coverage. *Grube*, 173 Wis. 2d at 73. We also held that it was "estopped from raising any challenges to coverage; it must both defend and indemnify [its insured] because Secura denied coverage outright." *Id.* at 74. We then offered some rather specific advice to insurers:

> Rather than raising the issue in court, an insurer cannot deliberately reach its own conclusion on coverage and then maintain that a clause in the policy would have excused it from indemnifying had the coverage issue correctly been decided by a court originally. There are several procedures insurers can use to raise the coverage issue and thus retain their right to challenge coverage. The insurer and the insured could

enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage. However, the insured is not obligated to sign such an agreement. Alternatively, the insurer could request a bifurcated trial or a declaratory judgment so that the coverage issue would be addressed separately by a court. In addition, the insurer could give the insured notice of intent to reserve rights. When a reservation of rights is made, the insured can pursue his own defense not subject to the control of the insurer, but the insurer still would be liable for legal fees incurred.

*Id.* at 75 (footnote omitted).[3]

¶ 14. What constitutes a sufficient reservation of rights letter has not been addressed in Wisconsin but has been addressed in other jurisdictions and collected in LEE R. RUSS & THOMAS F. SEGALLA, 14 COUCH ON INSURANCE § 202:47 (3d 1999) (footnotes omitted):

[A]n insurer's reservation of rights has been held adequate, where the insurer's communication to the insureds explicitly reserved all rights to contest the policy's applicability, where the insurer's letter ad-

---

[3] A national treatise offers the same alternatives to an insurer who questions whether it has a duty to defend an insured:

An insurer, faced with the dilemma of whether to defend or refuse to defend a proffered claim, has several options—

1. Completely decline to assume insured's defense.

2. Seek declaratory judgment as to its obligations and rights before or pending trial of the underlying action.

3. Defend under reservation of rights or nonwaiver agreement and adjudicate coverage issues in a supplemental suit.

4. Assume insured's unqualified defense.

LEE R. RUSS & THOMAS F. SEGALLA, 14 COUCH ON INSURANCE § 202:1 (3d 1999) (footnotes omitted).

equately informed anyone of average intelligence that the insurer was claiming policy defenses to the underlying litigation against the insured under the policy even though the insured's representative stated that he or she did not understand the letter and simply filed it away, where the reservation of rights letter informed the insured that the insurer would provide a defense under reservation of rights, pointed out specific policy provisions that could result in noncoverage, and informed the insureds that because there might be liability in excess of policy limits, they had right to secure independent counsel, and where a reservation of rights letter specifically identified the policy in question, informed the estate that an attorney had been retained to defend a wrongful death action brought against the estate, and apprised the estate of the initial results of the insurer's investigation.

DISCUSSION

■

¶ 15.   On appeal, the District acknowledges "the general rule that coverage cannot be created by the doctrines of estoppel or waiver. *See,* for example, *Shannon* . . . 150 Wis. 2d [450–51]." However, it argues that there is an exception to this rule "applicable in precisely this situation when the insurer fails to notify the insured of a coverage issue until **after** the insured suffered prejudice."

¶ 16.   CIC cites *Utica Mutual Insurance Co. v. Klein & Son, Inc.,* 157 Wis. 2d 552, 460 N.W.2d 763 (Ct. App. 1990), and *Shannon* to support the circuit court's conclusion that insurance policy coverage clauses cannot be defeated by waiver or estoppel.[4] It argues that there

---

[4] The terms "waiver" and "estoppel" are defined in *Von Uhl v. Trempealeau County Mutual Insurance Co.*, 33 Wis. 2d 32, 37, 146 N.W.2d 516.(1966):

is a sound public policy reason for this general rule, "[A]n insurer should not have to cover a loss for which the insured paid no premium." CIC challenges the District's argument that there is an exception to the general rule by pointing out that no Wisconsin court has adopted such an exception.

¶ 17. The parties are correct that the general rule emanating from *Shannon* and *Utica* is that coverage under an insurance policy cannot be created either by waiver or estoppel. *Shannon*, 150 Wis. 2d at 454–55; *Utica*, 157 Wis. 2d at 560–61. While those two cases also stand for the proposition that a forfeiture clause, as compared to a policy exclusion, can be waived, the forfeiture/waiver analysis is inapplicable here: everyone agrees that the clause in question is an exclusionary coverage clause because it goes to the scope of coverage CIC is providing or defines the risk CIC is assuming. *See Shannon*, 150 Wis. 2d at 454–55; *see also Utica*, 157 Wis. 2d at 560–61. For that reason, we begin with the above general rule—that coverage cannot be created by waiver or estoppel.

¶ 18. However, *Shannon* and *Utica* are distinguishable. Unlike here, in neither case did the insurer

---

The terms "waiver" and "estoppel" are often not distinguished and used interchangeably. "Waiver" is the voluntary and intentional relinquishment of a known right; intent to relinquish the right is an essential element of waiver. "Estoppel," on the other hand, consists of the action or nonaction of one party which induces reliance thereon by another, either in the form of action or nonaction, to his [or her] detriment. Further, intent to waive may arise as a matter of law from the conduct of the parties, or may be determined as a question of fact where the inference does not conclusively arise as a matter of law.

agree to defend the insured without a reservation of rights, retain counsel, and actively defend the insured through to a final judgment detrimental to the insured, only then to decline to provide coverage.

¶ 19. In *Shannon,* an injured child commenced a lawsuit against her parents and their insurer. *Shannon,* 150 Wis. 2d at 439. The insurer issued a reservation of rights letter and retained attorneys to represent the parents and it. *Id.* at 450. The insurer filed a summary judgment motion on the ground that a "family member exclusion clause" excluded coverage for the parents' liability arising from their negligence in causing the child's injuries. *Id.* at 439. After the circuit court found there was a question of fact as to whether the insurer had waived its right to rely upon the exclusion, the insurer sought to bifurcate the trial of the insurance coverage issues from the merits. *Id.* The jury found that the insurer had not waived its right to assert there was no coverage for injury to a family member and the child and her parents appealed. *Id.* at 439–40. Throughout the proceedings, the insurer and the insured were represented by different counsel. *Id.* at 436–37.

¶ 20. In *Utica,* the insurer retained counsel to represent the insured as soon as it received copies of the summons and complaint. *Utica,* 157 Wis. 2d at 555–56. Shortly thereafter, it declined coverage and commenced a declaratory judgment action to determine whether the insured's misrepresentation on an application for insurance precluded coverage under the policy issued by the insurer. *Id.* at 556. The insurer and insured were represented by different counsel. *Id.* at 554.

¶ 21. As we set forth in the facts, this case presents an entirely different situation: CIC accepted the defense of the Maxwell suit; CIC did not issue a

reservation of rights letter; CIC retained counsel, Levy, from its approved list of attorneys to represent both it and the District; the attorney actively defended the District, participating in all proceedings, including the summary judgment motions brought by Maxwell.

¶ 22. Levy was counsel of record for the District and CIC when an adverse final judgment was entered against the District.

¶ 23. Unlike *Shannon* and *Utica*, counsel hired by CIC actively conducted the District's defense on the merits and lost. Unlike *Shannon* and Utica, CIC never formally contested coverage before the resolution of the merits of the lawsuit. Unlike *Shannon* and *Utica*, CIC waited until the court fixed the District's liability before declaring that there was no coverage.

¶ 24. Treatises, case law from other jurisdictions, and case law from Wisconsin create an exception to the general rule that coverage cannot be created by the doctrines of estoppel or waiver under precisely the facts presented here—where the insurer exercised dominion and control over the litigation, without a reservation of rights or nonwaiver agreement.

> Although the doctrine of waiver and estoppel cannot generally be used to create insurance coverage where none exists under terms of the policy, an exception to the rule exists where a liability insurer assumes the insured's defense with knowledge of facts indicating noncoverage and without declaring a reservation of rights or obtaining a nonwaiver agreement in which case all policy defenses, including those of noncoverage, are waived.

14 Couch on insurance § 202:54 (footnotes omitted). This case falls squarely into this exception. CIC admits that at the time it undertook the defense of the District,

it knew that Maxwell was pursuing a cause of action for breach of contract and the policy it issued excluded coverage for "[a]ny amount actually or allegedly due under the terms of any payment or performance contract or agreement." Further, as we note above, *see* ¶ 3, CIC proceeded without issuing a reservation of rights letter.

¶ 25. This exception comes into play under the facts that exist is this case:

> Generally, it is held that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such a ground of forfeiture or noncoverage, at least where its conduct has prejudiced the insured in the interim.
>
> **Observation:** . . . .
>
> The insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy, regardless of the insurer's good faith in defending the suit[,] of whether the insurer's conduct may have been due to a mistake of law, or of whether the insurer has made no misrepresentation or concealment of material facts, even though the facts may have been within the knowledge of both the insured as well as the insurer.

14 COUCH ON INSURANCE § 202:55 (footnotes omitted).

¶ 26. Representative case law from other jurisdictions includes *Nationwide Mutual Insurance Co. v. Filos*, 673 N.E.2d 1099 (Ill. App. Ct. 1996). From early 1989 until August 1993, Nationwide defended the manufacturer of a dough breaker machine in a products liability case. *Id.* at 1101. Just twelve days before trial was to start in August 1993, Nationwide filed an

amended interrogatory answer denying the manufacturer was covered by the Nationwide policy on the date of injury. *Id.* Shortly thereafter, a settlement agreement between the injured party and the manufacturer was entered in the circuit court along with a settlement assignment to the injured party of the manufacturer's rights to sue Nationwide. *Id.* Nationwide filed a declaratory judgment action seeking a determination that there was no coverage. *Id.* The Illinois circuit court agreed with Nationwide and granted summary judgment in its favor; the injured party appealed. *Id.* at 1101–02.

¶ 27. The Illinois Appellate Court reversed, first recognizing that "the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy." *Id.* at 1103. However, it also recognized there were exceptions to the general rule:

> The second exception to the general rule, which is germane to the instant case, applies where an insurer defends an action on behalf of an insured, with knowledge of facts that would provide a defense to coverage, but without a reservation of rights. Under those circumstances, if the insurer attempts to deny coverage at a later date, it is estopped from raising the known facts as a defense.

> This exception to the general rule "is predicated upon the insurer's conflict of interest:  it is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage." It has also been justified by the fact that the insured is deprived of his [or her] right to control his [or her] defense.

668

*Id.* at 1104 (citations omitted).[5]

¶ 28. There are two Wisconsin cases directly on point. In *Pouwels v. Cheese Makers Mutual Casualty Co.*, 255 Wis. 101, 37 N.W.2d 869 (1949),[6] Attorney Lehner was retained to represent both the defendant

[5] Other representative cases include: *Employer's Liab. Assurance Corp., Ltd. v. Vella*, 321 N.E.2d 910, 914 (Mass. 1975) ("if the insurer knows of its right to disclaim and exercises dominion over the case at an important point without disclaiming liability or reserving rights, subsequent disclaimer is barred"); *Royal Ins. Co. v. Process Design Assocs., Inc.*, 582 N.E.2d 1234, 1240 (Ill. App. Ct. 1991) ("an insurer is generally estopped to assert a defense of noncoverage where the insurer undertakes to defend its insured in the underlying suit without reserving its rights"); *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 38 (Colo. App. 2004) (an insurer is estopped to deny coverage if the insured relied upon the insurer's defense to its detriment and was prejudiced thereby); and *Utica Mut. Ins. Co. v. 215 West 91st St. Corp.*, 283 A.D.2d 421, 422–23 (N.Y. App. Div. 2001) ("If an insurer assumes the defense of an action and controls its defense on behalf of an insured with knowledge of facts constituting a defense to the coverage of the policy without reserving its right to deny coverage, the insurer is estopped from denying coverage at a later time, even if mistaken on the requirement of coverage.").

[6] We recognize that in both *Shannon v. Shannon*, 150 Wis. 2d 434, 453–54 n.4, 442 N.W.2d 25 (1989), and *Utica*, 157 Wis. 2d at 564, it was observed that *Pouwels* is of "limited instructive value" in determining whether a policy clause is an exclusion provision or a forfeiture provision. However, as noted above, we are not determining whether an exclusionary provision or a forfeiture provision is at play—we acknowledge that an exclusionary provision is at issue. What we are determining is whether an insurer's exercise of dominion and control over the defense of a lawsuit, without a formal reservation of rights, estops it from denying coverage pursuant to that policy exclusion after its defense results in an adverse verdict against its insured.

and his insurance company, Cheese Makers Mutual *Insurance* Co. *Id.* at 106. After an adverse verdict was returned, Lehner moved to dismiss Cheese Makers Mutual *Insurance* Co. because it had been learned that the correct insurer was Cheese Makers Mutual *Casualty* Co. and it raised the claim of noncoverage. *Id.* In rejecting that claim, the supreme court held:

> Throughout these proceedings Mr. Ginsberg had been represented by Mr. Lehner, the attorney employed by the Cheese Makers Mutual *Casualty* Company, the defendant-appellant. The company paid Mr. Lehner for all his services, including his services on appeal. There had been no denial of liability, no notice of reservation of rights, and no attempt of any kind had been made by the company to reserve any of its rights under the policy.
>
> *The insurance company by its conduct waived its right to assert the policy defense of noncoverage.*

*Id.* at 106–07 (second emphasis added).

¶ 29. The second case from Wisconsin arises in the United States District Court for the Eastern District of Wisconsin, *Koehring Company v. American Mutual Liability Insurance Co.*, 564 F. Supp. 303 (E.D. Wis. 1983), the endgame in twenty-two years of litiga-

---

We acknowledge that in *Pouwels v. Cheese Makers Mutual Casualty Co.*, 255 Wis. 101, 104, 37 N.W.2d 869 (1949), the issue was whether "the policy of insurance did not conform to the intent of the parties and should be reformed," rather than whether a policy clause was an exclusion or forfeiture provision. However, as we have discussed, the modern trend championed in treatises, case law from other jurisdictions, and case law from Wisconsin creates an exception to the general rule that coverage cannot be created by the doctrines of estoppel or waiver under precisely the facts presented here and in *Pouwels*—where the insurer exercises dominion and control over the litigation without a reservation of rights or nonwaiver agreement.

tion. The details of the litigation are unimportant. Suffice it to say, American defended Koehring in two lawsuits, resulting in adverse verdicts, including the assessment of punitive damages, and then advised Koehring that it would not pay any punitive damage amounts. *Id.* at 310–11. Koehring retaliated with a declaratory judgment action, seeking a determination it was fully insured under the policy issued by American. *Id.* at 311. In agreeing with Koehring, Judge Evans observed:

> It has been stated that it is a strong policy of this state that an insurer should not be able to purport to provide coverage and then escape liability when a claim is made for reimbursement. A *fortiori*, an insurer should not be allowed to escape liability where it attempts to tie the hands of its insured, claiming to have the exclusive right to control an insured's defense under the pretense that the policy provides coverage of all claims, and then when the cause is determined against it, insist that upon closer reading or upon some public policy ground the insured ought to be liable for at least part of the damages awarded.

*Id.* at 312.

¶ 30.   In both this case and *Koehring*, the insurer assumed the defense without a reservation of rights; in both cases the insurer had full knowledge of the damages claimed; in both cases the insurer assumed full trial responsibilities; and in both cases the insurers declined the insureds' request to have its counsel assume trial responsibility. *See id.* In *Koehring*, the insurer's exercise of full dominion and control over the case resulted in Judge Evans observing:

> [O]ne aspect of the present dispute simply leaps up and demands attention. The issue is waiver and estoppel. Clearly, if there ever was a case where those doctrines should apply, this is it.

*Id.* And after citing to *Pouwels*, he went on to hold:

[A]n insurer cannot change its mind after having tried and lost a case which it tried under an assurance of coverage. There is considerable authority to the effect that a liability insurer, by assuming the defense of an action against an insured, is thereafter estopped to claim that the loss resulting to the insured from an adverse judgment is not within the coverage of the policy. *See* Appleman's *Insurance Law and Practice,* § 4692. This is based on the premise that assumption of the insured's defense or unreasonable delay in asserting a defense to coverage clearly prejudices the insured.

*Koehring Co.*, 564 F. Supp. at 313.

¶ 31. Judge Evans then detailed the prejudice to the insured when the insurer exercises full dominion and control over the defense:

In most jurisdictions, an insurer's control of the defense of a suit is automatically presumed to be prejudicial to the insured.

Prejudice is presumed because the insurer has taken away from the insured innumerable rights associated with the control of the defense, including the choice of trial by judge or jury; the ability to negotiate a settlement; and the ability to decide when and if certain defenses or claims will be asserted.

*Id.* (citations omitted).

¶ 32. CIC's position is that even after an insurer, without a reservation of rights, exercises full dominion and control over a lawsuit and a final judgment detrimental to the insured is entered, the insurer can avoid coverage by invoking the general rule from *Shannon* that coverage cannot be created by the doctrines of estoppel or waiver. *See Shannon*, 150 Wis. 2d at 450–51. Adopting this argument would make a mockery of

*Grube*'s recommendation that insurers issue reservation of rights letters when they wish to contest coverage. *See Grube*, 173 Wis. 2d at 75. Absolving CIC from providing coverage after it "lost" the District's case will destroy the purpose and effectiveness of the reservation of rights agreement. *See Iowa Nat'l Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 43 Wis. 2d 280, 286, 168 N.W.2d 610 (1969). Reservation of rights agreements are in the public interest, *id.*; they must be encouraged by imposing consequences if an insurer puts the insured at risk by assuming dominion and control over a lawsuit without a reservation of rights and with knowledge of facts indicating noncoverage, and then seeks to avoid coverage after a final judgment is entered against its insured.

¶ 33. We agree with the rationale of the authorities we have discussed, especially the reasoning in *Koehring*. Accordingly, we hold that CIC is estopped from denying coverage because the District relied on CIC's defense to its detriment and was prejudiced thereby. We reverse the judgment of the circuit court and remand for proceedings consistent with this decision.

*By the Court.*—Judgment reversed and cause remanded.