Dawn L. MAXWELL,
Plaintiff,

v.

HARTFORD UNION HIGH SCHOOL DISTRICT and
Hartford Union High School Board of Education,
Defendants-Third-Party Plaintiffs-Appellants,

v.

COMMUNITY INSURANCE CORPORATION,
Third-Party Defendant-Respondent-Petitioner.

Supreme Court

*No. 2009AP2176. Oral argument September 14, 2011.
—Decided May 30, 2012.*

2012 WI 58

(Also reported in 814 N.W.2d 484.)

238

240

For the third-party-defendant-respondent-petitioner there were briefs filed by *Lori M. Lubinsky, Sara K. Beachy* and *Axley Brynelson, LLP,* Madison and oral argument by *Lori M. Lubinsky.*

For the third-party plaintiffs-appellants there was a brief by *James W. Mohr, Jr.* and *Mohr & Anderson, LLC,* Hartford, and oral argument by *James W. Mohr, Jr.*

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Maxwell v. Hartford Union High School District,* 2010 WI App 128, 329 Wis. 2d 654, 791 N.W.2d 195, which reversed a judgment of the circuit court for Washington County, James K. Muehlbauer, Judge. The circuit court granted summary judgment to Community Insurance Corporation (CIC) on a claim by the Hartford Union High School Board of Education and the Hartford Union High School District (collectively "the District") that insurance coverage had been created by virtue of the insurer's failure to issue a reservation of rights letter during its unsuccessful defense of the District in a contract lawsuit. The court of appeals reversed, holding that "CIC is estopped from denying coverage because the District relied on CIC's defense to its detriment and was prejudiced thereby." *Id.,* ¶ 33. The issue presented for review is whether an insurer's failure to issue a reservation of rights letter is sufficient to defeat, by waiver or estoppel, a coverage clause in an insurance contract that would otherwise justify the insurer's denial of coverage.

¶ 2. We conclude that the failure to issue a reservation of rights letter cannot be used to defeat, by waiver or estoppel, a coverage clause—as distinguished from grounds for forfeiture—in an insurance contract.

We strongly urge insurers to communicate with their insureds about their potential coverage defenses, but we do not see the failure to issue a reservation of rights letter as grounds to require an insurer to provide insurance coverage that does not otherwise exist in the insurance contract. Consequently, we reverse the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶ 3. Dawn Maxwell (Maxwell) began her employment with the District in 2000, always serving in administrative capacities. She entered into a new employment contract with the District in 2006. It covered the time period from July 1, 2006, to June 30, 2008. In January 2007, however, Maxwell was informed that her position would be eliminated at the end of the 2006–2007 school year. After a series of back and forth negotiations and events, including an interim settlement agreement, Maxwell was told that her employment would end on August 31, 2007.

¶ 4. On August 30, 2007, Maxwell filed a complaint against the District. CIC, the District's insurer, was not named as a party to this suit. Maxwell complained about the District's conduct in terminating her employment. She sought injunctive relief for immediate reinstatement of her position, monetary damages, and declaratory relief interpreting the contract. Her suit was based upon several alleged acts of misconduct by the District including breach of contract, breach of an interim agreement, violation of her due process rights under the Wisconsin Constitution, and violation of Wis. Stat. § 118.24.[1]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 5. Hartford Union High School had a $10,000,000 Public Entity Liability Insurance Policy from Community Insurance Corporation that was in effect from October 1, 2006 to October 1, 2007. The policy included the following language:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> . . . .
>
> SECTION II—DEFENSE AND SETTLEMENT
>
> We have the right and duty to defend any "suit" against the insured seeking monetary damages on account of "bodily injury", "personal injury", "property damage" or "errors and omissions" or any combination thereof . . . .
>
> "Defense costs" are payable in addition to the policy limit after any applicable deductible has been exhausted. . . .
>
> SECTION V—EXCLUSIONS
>
> This policy does not apply to:
>
> . . . .
>
> D. Any liability for:
>
> 1. Any amount actually or allegedly due under the terms of any payment or performance contract or agreement, or
>
> 2. for that part of any award or settlement which is, or reasonably could be deemed to be, compensation for loss of salary or fringe benefits of your employee(s).

¶ 6. Attorney James W. Mohr was general counsel to the District. On September 4, 2007, he entered an appearance in the Maxwell case on behalf of the District

in Washington County Circuit Court. On September 5 he represented the District in opposing Maxwell's effort to obtain a temporary restraining order (TRO).

¶ 7. On September 7 Attorney Mohr forwarded the Summons and Complaint in the Maxwell matter to Brian Knee of Aegis Corporation (Aegis), the general administrator for CIC. Attorney Mohr acknowledged that Brian Knee had already spoken with Jerome Dudzik, the Director of Business Services for the District. Mohr also said that he had "been in relatively constant contact with Attorney Alan Levy" and was seeking confirmation that "the defense has been assigned to Attorney Alan Levy so that I [Attorney Mohr] can begin working directly with him."

¶ 8. The next day, Brian Knee sent a letter via email to Attorney Levy to update Levy on the status of the litigation. He noted that Attorney Mohr had begun work on a response to the Complaint and had already appeared at the hearing on Maxwell's request for a TRO.

¶ 9. In early September, CIC assigned Attorney Levy to represent the District in the Maxwell case. Attorney Levy entered a formal appearance on September 21, but had been present in an unofficial capacity at the TRO hearing on September 5. Attorney Levy remained an attorney of record for the District until August 2009. During this time, Attorney Levy did not represent CIC; and neither CIC nor Aegis (on CIC's behalf) sent a reservation of rights letter to the District or Attorney Mohr.

¶ 10. Attorney Levy signed papers submitted on behalf of the District throughout the litigation. Attorney Mohr remained an attorney of record until July 1, 2008, and participated in the case to some extent during this period after Attorney Levy was assigned. For

246

instance, he appeared with Levy at a motion hearing as a result of his personal knowledge of the events leading up to the termination of Maxwell's employment, and Brian Knee alleged in an affidavit that Attorney Mohr had "received drafts of every brief" before that brief was filed with the circuit court.

¶ 11. On June 11, 2008, after receiving numerous filings, the circuit court granted partial summary judgment to Maxwell on her claim for breach of contract. It awarded compensatory damages of $103,824.22 at a hearing September 8.

¶ 12. As noted, Attorney Mohr withdrew from the suit on July 1, 2008, after summary judgment had been granted but before damages had been awarded. On July 24 he emailed Attorney Levy, Michael Kremer (the superintendent of the District), and Brian Knee "to make one point perfectly clear": that because CIC had furnished a defense to the District without issuing a reservation of rights letter, CIC could not deny coverage for any compensatory damages that might be awarded. To support his position, Mohr cited *Pouwels v. Cheese Makers Mutual Casualty Co.,* 255 Wis. 101, 37 N.W.2d 869 (1949), and *Koehring Co. v. American Mutual Liability Insurance Co.,* 564 F. Supp. 303 (E.D. Wis. 1983). Mohr notified CIC that CIC could proceed however it wished "as long as the claim is fully covered," and he threatened a claim for bad faith to secure coverage. Mohr also requested a response from Brian Knee.

¶ 13. On August 18, 2008, Knee, litigation manager for CIC via Aegis, sent a response by email— informing Mohr that CIC was not liable for any judgment for damages due under Maxwell's performance contract or any settlement for lost wages or lost benefits. Knee cited *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989), and *Ahnapee & Western Railway*

*Co. v. Challoner,* 34 Wis. 2d 134, 148 N.W.2d 646 (1967). Knee notified Mohr that CIC would continue to defend the District, through appeal, but it was not liable for damages excluded from coverage in the policy.

¶ 14. On October 30, 2008, after compensatory damages had been awarded by the court, Mohr filed a motion for leave to file a third-party complaint against CIC because CIC had denied coverage for the monetary damages in the lawsuit. That complaint was filed in January 2009.

¶ 15. On April 21, 2009, Jerome Dudzik sent Brian Knee a letter expressing discontent with Attorney Levy and alleging Levy had a conflict of interest because he was paid by and reported to CIC.

¶ 16. Brian Knee responded to Dudzik on April 29, 2009, disputing that there was a conflict of interest on the part of Levy, but offering to provide the attorney that the District requested as long as the attorney reported to CIC and was paid directly by CIC.

## II. PROCEDURAL HISTORY

¶ 17. On January 20, 2009, the District filed a Third-Party Complaint against CIC alleging eight "causes of action" seeking declaratory relief that the policy provided coverage and that CIC could "assert no coverage defenses, nor policy limit defenses." Additionally, the District sought attorney fees and costs as well as punitive damages.

¶ 18. On March 19, 2009, CIC moved to dismiss the complaint pursuant to Wis. Stat. § 802.06(2)(a)6., for failure to state a claim upon which relief can be granted. The motion to dismiss relied on the policy's coverage exclusion and on Wisconsin law stating that insurance coverage cannot be created or expanded by waiver or estoppel.

¶ 19. Attorney Mohr responded by filing a motion for summary judgment "that the policy of insurance issued by Third-Party Defendant [CIC] to Third-Party Plaintiffs [the District] provides coverage to Third-Party Plaintiffs for the claims asserted against them" by Dawn Maxwell. The grounds for summary judgment were that:

> 1. The Third-Party Defendant issued a policy of insurance to the Third-Party Plaintiffs which was in effect when this lawsuit arose.
>
> 2. Third-Party Plaintiffs tendered the defense of this lawsuit to Third-Party Defendant which accepted it in September, 2007 without any reservation of rights whatsoever.
>
> 3. Third-Party Defendant has never issued a reservation of rights letter to Third-Party Plaintiffs nor ever advised Third-Party Plaintiffs that there were coverage issues under their policy of insurance until *after* Third-Party Plaintiffs lost a Motion for Summary Judgment establishing Third-Party Plaintiffs' liability to the Plaintiff.
>
> 4. Such delayed notice of a coverage denial has prejudiced the Third-Party Plaintiffs—both actually and as a matter of law.

¶ 20. The District also submitted a brief responding to CIC's motion to dismiss the third-party complaint and in support of their summary judgment motion. The District relied heavily on *Pouwels* and *Koehring,* as well as cases from other jurisdictions, for the proposition that estoppel can be applied to an insurer's failure to issue a reservation of rights letter and that prejudice must be presumed in these cases.

¶ 21. After several other filings by the parties, the circuit court issued a decision on July 15, 2009, on both the motion to dismiss and the motion for summary

judgment. The court determined that the complaint alleged actual coverage for the claims asserted and thus under some circumstances a claim could proceed. Therefore, the court denied CIC's motion to dismiss.

¶ 22. However, the circuit court also denied the District's motion for summary judgment. After discussing the language of the policy exclusions as well as the string of cases cited by each side, the court followed *Shannon* and held that there was no coverage for the salary and benefit claims and that CIC's conduct could not and did not create coverage for that aspect of the claim. The court stated that "Hartford did not pay for coverage of employee salary or fringe benefits claims, and under existing Wisconsin law, [CIC's] conduct cannot be determined to create such coverage." It granted summary judgment to CIC on that basis.

¶ 23. As noted, the court of appeals reversed the circuit court. After acknowledging the general rule that "coverage under an insurance policy cannot be created either by waiver or estoppel," *Maxwell,* 329 Wis. 2d 654, ¶ 17, the court of appeals distinguished *Shannon,* and *Utica Mutual Insurance Co. v. Klein & Son, Inc.,* 157 Wis. 2d 552, 460 N.W.2d 763 (Ct. App. 1990), to find an exception to the general rule when "the insurer agree[s] to defend the insured without a reservation of rights, retain[s] counsel, and actively defend[s] the insured through to a final judgment detrimental to the insured, only then to decline to provide coverage." *Maxwell,* 329 Wis. 2d 654, ¶ 18.

¶ 24. The court of appeals relied on *Couch on Insurance* and case law from other jurisdictions to establish the framework for its analysis. *Id.,* ¶¶ 24–27. It then turned to *Pouwels* and *Koehring* to establish that Wisconsin cases supported an application of waiver or estoppel to preclude the insurer from asserting the

250

policy defense of noncoverage. *Id.*, ¶ 28–29. After this discussion and emphasis on the importance of a reservation of rights letter, *id.*, ¶ 32, the court of appeals held that "CIC is estopped from denying coverage because the District relied on CIC's defense to its detriment and was prejudiced thereby." *Id.*, ¶ 33.

¶ 25. CIC filed a petition for review which the court granted on February 8, 2011.

## III. STANDARD OF REVIEW

¶ 26. This review arises from a challenge to the circuit court's grant of summary judgment. It is reviewed de novo applying Wis. Stat. § 802.08(2) in the same manner as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The legal issue before the court, whether estoppel or waiver apply in this case when an insurer failed to issue a reservation of rights letter, "is a question of law which this court decides independently without deference to the decision of the circuit court or the court of appeals." *Shannon,* 150 Wis. 2d at 450.

## IV. ANALYSIS

¶ 27. The CIC policy excluded coverage "for that part of any award or settlement which is, or reasonably could be deemed to be, compensation for loss of salary or fringe benefits of your employee(s)." The circuit court had no difficulty determining that the exclusion applied to the monetary damages claimed by Maxwell. That the CIC policy excludes coverage is not in dispute.

¶ 28. Thus, the issue presented is whether, because CIC failed to issue a reservation of rights letter to its insureds (before or during the time that it provided

251

an unsuccessful defense in the contract suit against them), CIC either waived or may be estopped from asserting its noncoverage defense, thereby requiring CIC to provide insurance coverage that is not in the insurance contract.

■

¶ 29. "The general rule is well established that the doctrine of waiver or estoppel based upon the conduct or action of the insurer or its agent is not applicable to matters of coverage as distinguished from grounds for forfeiture." *Shannon,* 150 Wis. 2d at 450–51. This rule has been the law of Wisconsin since 1896. *McCoy v. Nw. Mut. Relief Ass'n,* 92 Wis. 577, 66 N.W. 697 (1896).

¶ 30. The *McCoy* case illuminates the governing principles. Northwestern Mutual Relief Association issued a life insurance contract to McCoy. The application for the policy read: "I hereby agree that the association assumes no liability in case of suicide" and the policy included language that "[s]uicide or self-destruction of the member herein named, whether voluntary or involuntary, sane or insane, at the time thereof, is not a risk assumed by this association." *Id.* at 578–79 (statement of the case) (internal quotation marks omitted). In the face of arguments that the suicide clause should not be applied because of actions by the association, the court said:

> [W]e are unable to see how the settled rules under which it is held that a forfeiture or condition of forfeiture may be waived applies here. What is insisted upon is not really the waiver of a forfeiture, or an equitable estoppel against insisting upon a condition of the policy, the violation of which would otherwise work a forfeiture. It is a misuse of the term to so speak of the loss of benefits under the certificate in question. What is here sought is not to prevent a forfeiture, but to make a new

252

contract; to radically change the terms of the certificate so as to cover death by suicide, when by its terms that is expressly excluded from the contract. We do not understand that the doctrine of estoppel or waiver goes that far. After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forfeiture; *but such conduct,* though in conflict with the terms of the contract of insurance and with the knowledge of the insured and relied upon by him, *will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss.* . . . While a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all.

*Id.* at 584–85 (emphasis added).

¶ 31. *McCoy* was cited approvingly in *Ahnapee* in 1967:

The rule that estoppel may apply to a forfeiture of benefits contracted for but cannot be successfully invoked to create a liability for benefits or coverage not contracted for was first laid down in this state in *McCoy.* The *McCoy* case has been regarded as one of the early and important cases on the subject.

*Ahnapee,* 34 Wis. 2d at 141 (citation omitted).

¶ 32. *Ahnapee* strongly reinforced *McCoy's* principles:

[W]hile estoppel may be used to prevent an insurer from insisting upon conditions which result in forfeiture, estoppel has not been used in this state or in the majority of states as a means whereby the scope of coverage of an insurance policy can be expanded to

253

include coverage which was not provided for or was excluded in the contract.

*Id.* at 140. "Estoppel rules have consistently been held by this court not to apply to extend coverage in other types of insurance contracts." *Id.* at 141.

> As a general rule, conditions and terms, either of an inclusionary or exclusionary nature in the policy, go to the scope of the coverage or delineate the risks assumed, as distinguished from conditions and terms which furnish a ground for the forfeiture of coverage or defeasance of liability. Only in a few states can the doctrine of estoppel be used to enlarge the coverage of an insurance policy.

*Id.* at 142.

¶ 33. *McCoy, Ahnapee,* and other authorities such as *Rosenthal v. Insurance Co. of North America,* 158 Wis. 550, 557, 149 N.W. 155 (1914), support the strong affirmation of these principles in 1989 in *Shannon,* 150 Wis. 2d at 451–52.[2] *See also Utica,* 157 Wis. 2d at 560, 562 ("The waiver and estoppel issues are controlled by *Shannon* .... The principle underlying *Shannon* is that '[i]nsurance contracts cannot be created by estoppel.' ").[3]

---

[2] *See* note 5, *infra.*

[3] Wisconsin courts have held in other cases that waiver and estoppel do not apply to coverage clauses in insurance contracts. *Two Rivers Dredge & Dock Co. v. Md. Cas. Co. of Baltimore,* 168 Wis. 96, 99, 169 N.W. 291 (1918) ("To enforce an estoppel as claimed by plaintiff would not only nullify a part of the policy agreed to by both parties, but would also operate to extend the contract to a liability which the parties understood and expressly agreed should not be covered by the contract."); *Budget Rent-A-Car Sys., Inc. v. Shelby Ins. Group,* 197 Wis. 2d 663, 671–72, 541 N.W.2d 178 (Ct. App. 1995) (the court refused to apply waiver and estoppel to expand coverage); *Hoeft v. U.S. Fire Ins. Co.,* 153 Wis. 2d 135, 144, 450 N.W.2d 459 (Ct. App. 1989)

■

¶ 34. The rationale behind the rule is as sound today as it was in 1896. An insurer is liable for all risks it agrees to assume in the insurance contract. Exclusions in the contract are written to limit coverage. The insurer bases premiums on anticipated risks and the realization that ambiguities in the policy are likely to be construed against the insurer. An insured is entitled to the coverage it has paid for, provided that it does not forfeit that coverage by violating some provision of the contract. A contract of insurance should not be rewritten to bind the insurer to a risk it did not contemplate and for which it has not been paid.

■

¶ 35. Waiver and estoppel cannot be used to supply coverage from the insurer to protect the insured against risks not included in the policy or expressly excluded therefrom, for that would force the insurer to pay a loss for which it has not charged a premium. Moreover, if courts entertained the prospect that insureds could gain unpurchased coverage on account of collateral action by the insurer, unprotected insureds would have obvious incentive to pursue litigation.

■

¶ 36. By its terms, the rule stated does not preclude waiver and estoppel from being used "to prevent an insurer from insisting upon conditions which result in forfeiture." *Ahnapee,* 34 Wis. 2d at 140. An insurer must act timely and forthrightly on a forfeiture defense to avoid the risk of waiver or estoppel, inasmuch as the insured is seeking to invoke coverage it has paid for while the insurer is seeking to deny that coverage.

("The rule in Wisconsin is that estoppel can neither create an insurance contract where none exists, nor enlarge existing coverage.").

¶ 37. The rule as to forfeiture is reiterated in *Rosenthal:* "There might be waiver [by the insurer] of a forfeiture or of a breach of contract [by the insured], but waiver as a ground for extending the scope of a written contract beyond the usual and ordinary meaning of the language employed would be quite a novelty." *Rosenthal,* 158 Wis. at 557.

■

¶ 38. Stated differently:

> Estoppel may prevent an insurer from enforcing certain policy provisions against its insured. However, even where the relationship of insurer and insured exists, estoppel cannot be used to enlarge the coverage of an insurance policy, for then the effect would be to create a new contract providing coverage for which no premium has been paid.

*Madgett v. Monroe Cnty. Mut. Tornado Ins. Co.,* 46 Wis. 2d 708, 710–11, 176 N.W.2d 314 (1970) (internal quotation marks omitted).

¶ 39. The use of waiver and estoppel to prevent the enforcement of a *forfeiture* provision is illustrated in *Von Uhl v. Trempealeau County Mutual Insurance Co.,* 33 Wis. 2d 32, 41, 146 N.W.2d 516 (1966) (after continuing to accept late payments from the insured, the insurer was estopped from insisting upon enforcing a forfeiture clause); *Nolden v. Mutual Benefit Life Insurance Co.,* 80 Wis. 2d 353, 367–70, 259 N.W.2d 75 (1977) (the court held that the misrepresentation clause was subject to waiver or estoppel); and *Nugent v. Slaght,* 2001 WI App 282, ¶¶ 19–35, 249 Wis. 2d 220, 638 N.W.2d 594 (determining that the cancellation clause at issue was a forfeiture clause and that the elements of estoppel were present and thus remanding to the circuit court to determine whether to apply estoppel).

¶ 40. Providing a defense does not give rise to estoppel or waiver of a *coverage* clause. *Fitzgerald v. Milwaukee Auto. Ins. Co.*, 226 Wis. 520, 526–27, 277 N.W. 183 (1938) (insurer participated in defense of insured, but the court held that coverage did not exist and insurer was not estopped from denying coverage). *Cf. Wis. Transp. Co. v. Great Lakes Cas. Co.*, 241 Wis. 523, 531, 6 N.W.2d 708 (1942) ("[A]n insurer does not waive its defenses by defending an action.").[4]

¶ 41. On the other hand, providing and assuming full control of a defense *may* be grounds for establishing waiver or estoppel of a *forfeiture* clause when the

---

[4] In *Wisconsin Transportation,* the insurer breached its duty to defend after an insured refused to execute a specific reservation of rights agreement. *Wis. Transp. Co. v. Great Lakes Cas. Co.*, 241 Wis. 523, 527–31, 6 N.W.2d 708 (1942). The court stated that defending an action does not waive an insurer's defenses, and the court explained how providing a reservation of rights to an insured (regardless of whether the insured executes a reservation of rights agreement) preserves defenses. *Id.* At issue in *Wisconsin Transportation* were the sufficiency of a reservation of rights, a breach of the duty to defend, and even bad faith, not what types of clauses could be overcome by waiver or estoppel. While the insurer may have been contesting the scope of coverage rather than preserving a forfeiture defense, nothing in the court's opinion suggests that the court was modifying nearly one half century of law regarding creation of insurance coverage by estoppel. This point is supported by the fact that in *Wisconsin Transportation* the court was relying on *Hickey v. Wisconsin Mutual Ins. Co.*, 238 Wis. 433, 300 N.W. 364 (1941), a case that discussed waiver of *forfeitures. Id.* at 531. *Wisconsin Transportation* has not been understood by other court decisions, except perhaps *Pouwels v. Cheese Makers Mutual Casualty Co.*, 255 Wis. 101, 37 N.W.2d 869 (1949), to permit estoppel and waiver to apply to coverage clauses.

257

insurer fails to issue a reservation of rights.[5] In *Hickey v. Wisconsin Mutual Insurance Co.*, 238 Wis. 433, 300 N.W. 364 (1941), the court discussed a notice provision in an insurance contract—a forfeiture clause—which provided that the insured must give the insurer notice within five days of an accident to receive coverage under the policy. *Id.* at 434 (statement of the case). The court determined that the coverage at issue was within the scope of the policy and that the insurer's actions in defending the suit without raising the forfeiture clause defense could constitute waiver of the forfeiture clause. *Id.* at 436–38.

¶ 42. The District and the court of appeals rely on *Pouwels,* with the court of appeals asserting that it is "directly on point." *Maxwell,* 329 Wis. 2d 654, ¶ 28. The argument is made that *Pouwels* contradicts the rule in the cases previously cited.

¶ 43. *Pouwels* is an unusual case in which a bicyclist was injured when a driver negligently opened a car

---

[5] In *Shannon,* the insurer defended under an insufficient reservation of rights. *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989). The insurer designated an attorney to represent both the Shannons and the insurer, failed to specifically plead the family member exclusion in its answer, and forwarded to the Shannons a nonspecific reservation of rights which did not single out the family member exclusion defense. *Id.* at 450. The court held that the insurer could not waive or be estopped from enforcing a coverage clause, even under an insufficient reservation of rights. *Id.* at 455. The court of appeals, relying on *Hickey,* had held that the insurer had waived an exclusion clause. *Shannon v. Shannon,* 145 Wis. 2d 763, 774–78, 429 N.W.2d 525 (Ct. App. 1988). However, this court held that waiver and estoppel do not apply to coverage clauses, even though they can be applied in the forfeiture context. *Shannon,* 150 Wis. 2d at 450–51.

door. The driver did not own the vehicle. He was the brother of the owner who was present when the accident occurred. The bicyclist sued the owner and what he thought was the owner's insurer, Cheese Makers Mutual Insurance Company, to recover damages. Both defendants were represented by Attorney Howard Lehner. During the course of the liability trial, Lehner succeeded in getting Cheese Makers Mutual *Insurance* Company dismissed because the car owner, Al Ginsburg, had a policy with Cheese Makers Mutual *Casualty* Company, not the named defendant. Ginsburg later lost at trial and on appeal.

¶ 44. The bicyclist then sued the proper insurance company which denied coverage because its policy covered business use of the Ginsburg auto, not personal use. After listening to the evidence, the circuit court *reformed* the insurance contract because Ginsburg had specifically asked an agent of the insurer for dual coverage, and both he and the agent thought he had received it. On appeal, Cheese Makers asserted noncoverage, claiming that the "agent" wasn't really its agent.

¶ 45. One of the arguments in the plaintiff's brief was that Cheese Makers had waived the right to assert the defense of noncoverage. After deciding against the insurer on the merits, the court proceeded to address the issue of waiver, opining that "[t]he insurance company by its conduct waived its right to assert the policy defense of noncoverage." *Pouwels,* 255 Wis. at 107.

¶ 46. Examination of the briefs shows that the court's language and authorities were taken uncritically from the plaintiff's brief.[6] No party cited *McCoy* or *Rosenthal.* As the *Shannon* court later observed:

---

[6] The court cited *Wisconsin Transportation Co. v. Great Lakes Casualty Co.,* 241 Wis. 523, 6 N.W.2d 708 (1942), and *Hickey v. Wisconsin Mutual Insurance Co.,* 238 Wis. 433,

Nowhere in *Pouwels* is there a discussion of the issue of whether an exclusion [of coverage] in a policy can be waived. Furthermore, there is no discussion on whether Cheese Makers Mutual Casualty Company was attempting to base its noncoverage argument on an exclusion provision or a forfeiture provision. As a result, we find the case of limited instructive value for the situation before us.

*Shannon,* 150 Wis. 2d at 452 n.4.

¶ 47. In *Utica,* the court of appeals dismissed the importance of *Pouwels,* first, by quoting from the critique in *Shannon* and, second, by correctly observing that "the *Pouwels* court's finding of waiver was not necessary to its decision." *Utica,* 157 Wis. 2d at 564–65.

¶ 48. *Pouwels* was cited in *Ahnapee* by Justice Hallows in his discussion of reformation of a contract:

> An insurance policy like any other contract may be reformed because of mutual mistake when the policy does not contain the provisions intended by the parties to be included. But, the contract must be reformed to conform to some oral agreement or understanding which the written document was intended to express.

*Ahnapee,* 34 Wis. 2d at 137.

¶ 49. Justice Hallows had no problem citing *Pouwels* in an opinion in which he exuberantly affirmed the principles stated in *McCoy* and *Rosenthal. Pouwels* was a case in which coverage was created by reformation, not by waiver or estoppel. Reformation is not covered by the rule at issue because reformation is not rewriting a contract to create something unintended; it

---

300 N.W. 304 (1941). *Pouwels,* 255 Wis. at 107. These cases are distinguishable, the first involving the breach of a duty to defend, the second involving a forfeiture clause, not a coverage clause.

is rewriting the contract to conform it to the parties' prior agreement.

¶ 50. We find no Wisconsin case other than *Pouwels* that even arguably contradicts the many cases cited. *Koehring,* also relied upon by the court of appeals, is a federal case not binding on this court, especially in an interpretation of Wisconsin law. In *Koehring,* the United States District Court found coverage for claims of malicious prosecution and abuse of process, as well as punitive damages, in the insurance contract. Although the court acknowledged that its findings made it "unnecessary to go further," the court went on to suggest that the insurer was estopped from denying coverage. *Koehring,* 564 F. Supp. at 312–13.[7] The court cited *Pouwels* as authority. *Id.* However, because "waiver and estoppel" did not create coverage, the *Koehring* decision is not particularly relevant to this case.

¶ 51. As noted above, reformation, if based on adequate proof, falls outside the *McCoy-Ahnapee-Shannon* rule. There are two other exceptions that require discussion.

---

[7] *Koehring* was the result of over 20 years of litigation, leading Judge Evans to describe the case as a "quixotic legal odyssey." *Koehring Co. v. Am. Mut. Liability Ins. Co.,* 564 F. Supp. 303, 303–04 (E.D. Wis. 1983). The events that gave rise to Judge Evans' suggestion regarding estoppel were these: After initially defending under a reservation of rights, the insurer, in "a deliberate and well considered" decision, expressly withdrew the reservation of rights and affirmatively represented to the insured that it was providing coverage. *Id.* at 308–09. The insurer wrote " 'Since it has been decided by the American Mutual to afford coverage in protection of the Hyde litigation, we hereby withdraw or [sic] Notice of Reservation of Rights furnished your company.' " *Id.* at 309. Even though the insurer later attempted to avoid coverage, the court held that coverage existed not because of estoppel but because of the terms of the policy.

¶ 52. Insurers have multiple duties to their insureds. These duties include a duty to defend their insureds and a duty to act in good faith toward their insureds. When insurers breach these duties that arise out of the insurance contract, they may be subject to a measure of damages not limited by the contract.

¶ 53. Liability insurance coverage usually includes a duty to defend and a duty to indemnify. "The duty to indemnify and the duty to defend are separate contractual obligations. A policy may provide one without providing the other. When a contract imposes a duty to defend, however, that duty is broader than the duty to indemnify." *Johnson Controls, Inc. v. London Market,*, 2010 WI 52, ¶ 28–29, 325 Wis. 2d 176, 784 N.W.2d 579 (citations omitted). "[W]hen an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,* 2003 WI 33, ¶ 21, 261 Wis. 2d 4, 660 N.W.2d 666; *see also Wis. Transp. Co. v. Great Lakes Cas. Co.,* 241 Wis. 523.

 

¶ 54. When an insurer breaches a duty to defend its insured, the insurer is on the hook for all damages that result from that breach of its duty. As the court said in *Newhouse v. Citizens Security Mutual Insurance Co.,* 176 Wis. 2d 824, 501 N.W.2d 1 (1993),

> a party aggrieved by an insurer's breach of its duty to defend is entitled to recover all damages naturally flowing from the breach . . . . Damages which naturally flow from an insurer's breach of its duty to defend include: (1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and

(3) any additional costs that the insured can show naturally resulted from the breach.

*Id.* at 830, 838.

■

¶ 55. In *Newhouse,* the court determined that these damages could include damages beyond the policy limits. *Id.* at 838. While these damage awards are sometimes framed as the insurer being "estopped" from denying coverage, *see, e.g., Grube v. Daun,* 173 Wis. 2d 30, 74, 496 N.W.2d 106 (Ct. App. 1992) (insurer that breached its duty to defend "is estopped from raising any challenges to coverage"), they are the measure of damages actually caused by an insurer's breach of the contractual duty to defend, not an estoppel based on some otherwise inequitable conduct in the eyes of the insured. *See Newhouse,* 176 Wis. 2d at 838. This principle is at work in many of the cases that the District cites,[8] *e.g., Professional Office Buildings, Inc. v. Royal*

---

[8] Several of the cases the District cites also relate to how insurers can avoid breaching their duty to defend and what liability insurers are subject to when they breach their duty to defend. *Mowry v. Badger State Mut. Cas. Co.,* 129 Wis. 2d 496, 385 N.W.2d 171 (1986) (discussing bifurcation of coverage and liability); *Elliott v. Donahue,* 169 Wis. 2d 310, 485 N.W.2d 403 (1992) (discussing insurers' role in determining disputed coverage while providing initial defense and holding that insured can collect attorney fees incurred in defending coverage); *Liebovich v. Minn. Ins. Co.,* 2007 WI App 28, ¶ 4, 299 Wis. 2d 331, 728 N.W.2d 357 (discussing duty to defend and suggesting insurers seek judicial determination of coverage as a way to avoid breaching duty to defend).

Other cases cited by the District are inapplicable to this case. *Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 405 N.W.2d 732 (Ct. App. 1987) (involved non-compliance by the insurer with a statute); *Peterman v. Midwestern Nat'l Ins. Co.,*

*Indemnity. Co.,* 145 Wis. 2d 573, 585–86, 427 N.W.2d 427 (Ct. App. 1988) (insurer breached its duty to defend and therefore was required to provide coverage for insured), as well as many of the cases cited in the dissent.

¶ 56. The scope of coverage in these cases is not expanded by waiver or estoppel. Rather, when an insurer breaches the insurance contract by breaching its duty to defend its insured, the insurer is liable for the damages resulting from that breach of contract.

■■ ■■

¶ 57. The insurer also has a duty to act in good faith towards its insured. *See Anderson v. Cont'l Ins. Co.,* 85 Wis. 2d 675, 686–87, 271 N.W.2d 368 (1978). When an insurer breaches that duty, the insurer is liable in tort for the damages the insurer causes. *Id.* These damages are not an expansion of the coverage under the insurance policy as a result of waiver or estoppel. They are a reflection of the insurer's tortious conduct. *See also Hilker v. W. Auto. Ins. Co. of Fort Scott, Kan.,* 204 Wis. 1, 231 N.W. 257 (1930) (discussing the duty of an insurer to act in good faith when controlling the defense of an insured when the potential damages exceed policy limits).

¶ 58. Bad faith and breach of the duty to defend are not situations in which an insurer becomes liable for

177 Wis. 2d 682, 698, 503 N.W.2d 312 (Ct. App. 1993) (the issue was "whether ERISA, under its federal common law, recognizes claims supported by the doctrine of estoppel" and thus the case is inapplicable to Wisconsin law); *Valley Bancorporation v. Auto Owners Ins. Co.,* 212 Wis. 2d 609, 619–23, 569 N.W.2d 345 (Ct. App. 1997) (determined that underlying conduct of a cause of action determined insurance coverage (not the label in a verdict form) and the policy was read against the insurer in favor of coverage when insurer had not, through litigation, done well to distinguish what claims were being brought).

insurance coverage not included in the insurance contract; in these cases insurers are liable for the damages they cause by breach of contract or by tortious breach of duties arising from the contract. While at times these cases have been explained in terms of "estoppel," the cases do not refer to estoppel in the traditional sense and the estoppel referred to does not expand or create coverage.

¶ 59. In this case, CIC provided a defense—fulfilling its duty to defend the District. While the District raised several claims in its third-party complaint against CIC, the issue before this court is whether CIC's failure to send a reservation of rights letter while defending the District is enough, under waiver or estoppel, to prevent CIC from invoking its defense of noncoverage. CIC's failure to issue a reservation of rights letter in this case did not constitute a breach of the duty to defend or bad faith. Thus, CIC did not breach its duties to the District. The exclusion clause relates to the scope of coverage contracted for and is thus not waived by the collateral conduct of the insurer.

¶ 60. We pause to emphasize the importance of insurers communicating with their insureds. An insurer is in a "superior position to the insured in relation to the formation and interpretation of the insurance contract." *Towne Realty, Inc. v. Zurich Ins. Co.,* 201 Wis. 2d 260, 269, 548 N.W.2d 64 (1996).[9] This principle

---

[9] *Towne Realty* involved interpretation of "tender of defense" as well as insurer liability after breach of a duty to defend for pre-tender defense expenses and for countersuit expenses. *Towne Realty, Inc. v. Zurich Ins. Co.,* 201 Wis. 2d 260, 264, 548 N.W.2d 64 (1996).

underlies the expansive duty for insurers to defend their insureds and to communicate with their insureds in the event it is unclear whether an insured has tendered the defense of a suit to the insurer. *Id.* at 268–69. Communication on other critical issues is strongly encouraged.

¶ 61. In short, this opinion must not be interpreted as a license for insurers not to communicate forthrightly with their insureds—especially when insurers dispute coverage. It certainly would have been better practice for CIC to send a reservation of rights letter in this case. Its failure to do so has created ill will and completely overshadowed CIC's extensive costs in providing a defense. As CIC conceded in oral argument, this case would not be here if CIC had sent a reservation of rights letter. The lesson here is that CIC could have avoided the costs of this appeal by issuing a reservation of rights letter. A reservation of rights letter can not only head off litigation but also preserve forfeiture defenses at a time when an insurer may not know whether such a defense exists. As we have clearly stated, forfeiture defenses can be waived, because the insured has purchased the coverage the insurer seeks to deny.

¶ 62. Communication between the insurer and the insured, whether in the form of a reservation of rights letter or other form, demonstrates good faith, prevents surprises and hard feelings, and tends to avoid litigation between insurers and their insureds.

¶ 63. Nonetheless, we hold that the failure of CIC to issue a reservation of rights letter to the District, before or during its defense of the District, does not defeat the coverage exclusion in the insurance contract by waiver or estoppel.

¶ 64. Consequently, we reverse the decision of the court of appeals.

## V. CONCLUSION

¶ 65. In reaching our decision, we have applied longstanding Wisconsin law. We conclude that the failure to issue a reservation of rights letter cannot be used to defeat, by waiver or estoppel, a coverage clause—as distinguished from grounds for forfeiture—in an insurance contract. We strongly urge insurers to communicate with their insureds about their potential coverage defenses, but we do not see the failure to issue a reservation of rights letter as grounds to require an insurer to provide insurance coverage that does not otherwise exist in the insurance contract. Consequently, we reverse the decision of the court of appeals.

¶ 66. *By the court*—The decision of the court of appeals is reversed.

¶ 67. N. PATRICK CROOKS, J. (*dissenting*). Our case law is absolutely clear about the proper procedure that an insurer must follow to contest coverage. "In cases where the coverage and liability issues are not bifurcated, insurance companies can protect themselves by defending under a reservation of rights. In this way the insurer gives up none of its rights should it ultimately be determined that coverage does not exist under the policy." *Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 839, 501 N.W.2d 1 (1993). This case illustrates precisely the kind of unfairness that reservation of rights letters are intended to prevent. The majority does away with a perfectly clear and effective rule that was intended to protect insureds without providing any good reason to do so.

¶ 68. This dispute could have been avoided easily if Community Insurance Corporation ("CIC") had issued a reservation of rights letter when it provided a

defense to its insured, Hartford Union High School District and Hartford Union High School Board of Education (collectively "the District"). If CIC had done so, there would be no question that CIC could later challenge coverage. Instead, CIC now denies coverage to the District despite controlling its defense throughout litigation on the merits that resulted in an adverse judgment, and only later raising coverage issues.

¶ 69. The majority's error begins with its presentation of the issue as "whether an insurer's failure to issue a reservation of rights letter is sufficient to defeat, by waiver or estoppel, a coverage clause in an insurance contract that would otherwise justify the insurer's denial of coverage." Majority op., ¶ 1. This leads the majority to erroneously conclude that this case is controlled by a "general rule" that waiver or estoppel applies only where the insurer seeks to assert a forfeiture clause as a defense to coverage and not if the clause at issue is a coverage clause.

¶ 70. The issue should be stated more precisely, and more faithfully to the specific facts presented, as whether CIC has waived, or is estopped from asserting, any coverage defense because it controlled the District's defense throughout litigation resulting in an adverse judgment against the District, and only later contested coverage. When the issue is examined in this way, Wisconsin law clearly provides that CIC has waived, or is estopped from asserting, a defense to coverage because it failed to follow the proper procedure for contesting coverage when providing a defense to its insured. *See, e.g., Pouwels v. Cheese Makers Mut. Cas. Co.,* 255 Wis. 101, 37 N.W.2d 869 (1949); *Koehring Co. v. Am. Mut. Liab. Ins. Co.,* 564 F. Supp. 303 (E.D. Wis. 1983).

¶ 71. The majority's decision leaves the District without a remedy for the prejudice it suffered. It

268

conflicts with well-established case law that holds an insurer accountable if it fails to give proper notice, in advance, that it intends to deny coverage. It also conflicts with the "strong policy of [Wisconsin] that an insurer should not be able to purport to provide coverage and then escape liability when a claim is made for reimbursement." *Koehring*, 564 F. Supp. at 312. There is no good reason to do away with this perfectly sound rule. For those reasons, I respectfully dissent.

I

¶ 72. On August 30, 2007, Dawn Maxwell (Maxwell) filed suit against the District based on an alleged breach of her employment contract. The District provided its insurer, CIC, with notice of the suit around September 7, 2007. CIC agreed to tender a defense and provided counsel to the District who was approved and retained by CIC. CIC did not notify the District that it was contesting coverage, did not issue a reservation of rights letter, and did not move to bifurcate the trial in order to contest coverage before defending the District, either in a trial on the merits or on a motion for summary judgment.

¶ 73. Counsel for the District was provided by CIC and ultimately lost the case on summary judgment. The circuit court granted Maxwell's motion for partial summary judgment on June 11, 2008, concluding that the District breached Maxwell's employment contract. The circuit court awarded Maxwell $103,824.22 in compensatory damages.

¶ 74. Only after the circuit court determined that the District was liable did CIC contest coverage for the first time, sometime between August and October 2008. As a result, the District filed a third-party complaint

against CIC seeking a declaratory judgment that there was coverage under the District's policy, and that CIC had waived, or was estopped from asserting, any coverage defenses. CIC conceded that it did not issue a reservation of rights or contest coverage prior to the liability finding but asserted that waiver and estoppel do not apply to coverage clauses such as the exclusion that CIC argues applies here. The circuit court agreed with CIC and granted summary judgment in its favor on the basis that waiver and estoppel cannot be employed to create coverage where none otherwise exists.

¶ 75. The court of appeals disagreed, reversed and remanded to the circuit court. *Maxwell v. Hartford Union High Sch. Dist.,* 2010 WI App 128, 329 Wis. 2d 654, 791 N.W.2d 195. The court of appeals distinguished *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989), and *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis. 2d 552, 460 N.W.2d 763 (Ct. App. 1990), which held, in the context of those cases, that waiver or estoppel could be applied only to forfeiture and not to coverage clauses. *Maxwell,* 329 Wis. 2d 654, ¶¶ 18–23. Instead, the court of appeals concluded that Wisconsin case law, treatises, and case law from other jurisdictions provide that in this precise situation, the doctrines of waiver or estoppel preclude CIC from asserting a coverage defense. *Id.,* ¶¶ 24–33 (providing that "where a liability insurer assumes the insured's defense with knowledge of facts indicating noncoverage and without declaring a reservation of rights or obtaining a nonwaiver agreement . . . all policy defenses, including those of noncoverage, are waived" (quoting 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 202:54, at 202–127 (3d ed. 2005)), and relying on *Pouwels,* 255 Wis. 101, *Koehring,* 564 F. Supp. 303, and case law from other jurisdictions).[1]

---

[1] *See Nationwide Mut. Ins. Co. v. Filos,* 673 N.E.2d 1099,

## II

¶ 76. An insurer has a duty to provide its insured with a defense if the policy provides arguable coverage for the claims asserted based on the complaint. *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. But an insurer does not waive its right to later contest the existence of actual coverage by providing a defense to its insured. *Hickey v. Wis. Mut. Ins. Co.*, 238 Wis. 433, 366, 300 N.W. 364 (1941). An insurer has several options to comply with its duty to defend while preserving its right to challenge coverage.

> There are several procedures insurers can use to raise the coverage issue and thus retain their right to challenge coverage. The insurer and the insured could enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage. However, the insured is not obligated to sign such an agreement. Alternatively, the insurer could request a bifurcated trial or a declaratory judgment so that the coverage issue would be addressed separately by a court. In addition, the insurer could give the insured notice of intent to reserve rights. When a reservation of rights is made, the insured can pursue his own defense not subject to the control of the insurer, but the insurer still would be liable for legal fees incurred.

*Grube v. Daun*, 173 Wis. 2d 30, 75, 496 N.W.2d 106 (Ct. App. 1992) (footnote omitted).

---

1103–04 (Ill. App. Ct. 1996); *Emp'rs Liab. Assurance Corp., Ltd. v. Vella,* 321 N.E.2d 910, 914 (Mass. 1975); *Royal Ins. Co. v. Process Design Assocs., Inc.,* 582 N.E.2d 1234, 1240 (Ill. App. Ct. 1991); *Mgmt. Specialists, Inc. v. Northfield Ins. Co.,* 117 P.3d 32, 38 (Colo. Ct. App. 2004); *Utica Mut. Ins. Co. v. 215 W. 91st St. Corp.,* 283 A.D.2d 421, 422–23 (N.Y. App. Div. 2001).

¶ 77. Our precedent makes clear that an insurer providing a defense to its insured must do *something* to retain its right to challenge coverage; it must, in some manner, notify the insured of its intent to challenge coverage. *Id.* at 75–76 (providing the procedures available to insurers to "raise the coverage issue and thus *retain their right to challenge coverage*" when providing an initial defense) (emphasis added); *see also Pouwels,* 255 Wis. at 106–07; *Koehring,* 564 F. Supp. at 312–13; *Wisconsin Transp. Co. v. Great Lakes Cas. Co.,* 241 Wis. 523, 531, 6 N.W.2d 708 (1942).

¶ 78. The majority wrongly concludes that the only penalty for an insurer's failure to follow these procedures is that it waives any *forfeiture* clauses. According to the majority, waiver or estoppel cannot be applied to *coverage* clauses. This court, in *Shannon,* 150 Wis. 2d at 453–54, has described a coverage clause as one "of either an inclusionary or exclusionary nature going to the scope of the coverage assumed," and a forfeiture clause as one "furnishing a ground for the forfeiture of coverage or defeasance of liability." There is no question that the exclusion relied upon by CIC here to dispute coverage is a coverage clause.

¶ 79. Despite the majority's attempt to graft the forfeiture/coverage clause distinction into every insurance case alleging waiver or estoppel, examples abound in which an insurer has been precluded from asserting any coverage defense, whether based on a coverage or forfeiture clause, through waiver or estoppel. *See, e.g., Prof'l Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis. 2d 573, 586, 427 N.W.2d 427 (Ct. App. 1988) ("We conclude, therefore, that Royal, having breached its duty to defend the Mississippi action, may not now challenge or otherwise litigate the coverage issues."); *Grube,* 173 Wis. 2d at 76 ("We conclude that Secura, by

not contesting coverage in court and by breaching its duty to defend Achter, is estopped from raising any challenges to coverage and must indemnify Achter up to the limits of his policy."); *Benjamin v. Dohm,* 189 Wis. 2d 352, 365, 525 N.W.2d 371 (Ct. App. 1994) (recognizing that "[a]n insurer will lose its right to contest coverage and to control the defense when it improperly refuses to defend the insured," but concluding that the insurer did not breach its duty to defend); *Radke v. Fireman's Fund Ins. Co.,* 217 Wis. 2d 39, 48, 577 N.W.2d 366 (Ct. App. 1998) ("Wisconsin law is clear. When an insurer wrongfully refuses to defend on the grounds that a claim against its insured is not within the coverage of the policy, the insurer cannot later contest coverage, but is liable to the insured."); *Wisconsin Transp. Co.,* 241 Wis. at 531 ("Under the terms of the policy in question the defendant was obligated to defend the action. If it desired to negative any waiver of its rights by so defending all that was necessary for it to do was to notify the defendant in that action and the plaintiff in this action that by so doing it was not waiving any of its rights or defenses with respect to coverage or liability."). The majority recognizes that these cases depart from its "general rule." The majority dismisses this disparity by concluding that waiver or estoppel was applied in these cases only because it did not operate to expand coverage, but instead provided damages to the insured flowing from the breach.

¶ 80. Similar to cases involving an insurer's breach of one of its contractual duties are other cases involving conduct by an insurer that prejudices an insured during litigation. Wisconsin law provides that an insurer may have waived, or will be estopped from asserting, any coverage defense based on certain conduct, such as CIC's conduct in this case: providing a

273

defense to the District without issuing a reservation of rights or otherwise contesting coverage and controlling the defense throughout litigation resulting in an adverse judgment against the District. *Pouwels,* 255 Wis. 101; *Koehring,* 564 F. Supp. 303; Arnold P. Anderson, *Wisconsin Insurance Law* § 7.91, at 83 (6th ed. 2011). As in duty to defend cases, an insurer can be held liable to cover damages for which it would have otherwise had a valid defense based on the insurer's own actions during litigation that have prejudiced the insured. *Pouwels* and *Koehring,* cases that addressed this precise situation, compel the conclusion that CIC's own conduct in providing a defense to the District without properly contesting coverage results in waiver or estoppel of its coverage defenses.

¶ 81. In *Pouwels,* the insurer, Cheese Makers Mutual Casualty Company (Cheese Makers), defended itself and also provided a defense for its insured, Al Ginsberg (Ginsberg), in a liability action arising from an automobile accident. 255 Wis. at 102–03. Cheese Makers was dismissed from the liability action, but it continued to provide a defense to Ginsberg, ultimately resulting in a judgment against Ginsberg. *Id.* Ginsberg sued Cheese Makers for coverage, asserting that either the insurance contract had to be reformed to provide coverage or that coverage should be afforded because Cheese Makers waived its right to assert a coverage defense by providing a defense without properly raising coverage issues. *Id.* at 103–06. In regard to waiver of its coverage defenses, this court explained, "There had been no denial of liability, *no notice of reservation of rights,* and no attempt of any kind had been made by the company to reserve any of its rights under the policy. The insurance company *by its conduct waived* its right to assert the policy defense of non-coverage." *Id.* at

274

107 (emphasis added). *Pouwels* is directly on point and controls in this situation, as the United States District Court for the Eastern District of Wisconsin recognized in *Koehring,* 564 F. Supp. 303.

¶ 82. Many years of litigation preceded the court's decision in *Koehring.* Suffice it to say that American Mutual Liability Insurance Company (American Mutual) issued an insurance policy to Koehring Company (Koehring), and when Koehring was sued, American Mutual provided a defense under a reservation of rights but later withdrew its reservation of rights and stated that there was coverage. *Id.* at 308–09. Koehring was found liable for actual and punitive damages. *Id.* at 310. Only after judgment did American Mutual assert that it would not cover punitive damages. *Id.* Koehring sought a declaratory judgment that American Mutual must provide full coverage for the judgment against Koehring. *Id.* at 311.

¶ 83. The *Koehring* court concluded that American Mutual had waived or was estopped from asserting any coverage defenses after providing Koehring with a defense throughout litigation resulting in an adverse judgment against it, without maintaining a reservation of rights. *Id.* at 312–13. The district court relied on *Pouwels,* 255 Wis. 101, concluding:

> Under some circumstances an insurance company may change its mind and issue a disclaimer after it initially acknowledges coverage. But it *may not do so after it has exercised dominion over the case at an important point. . . .*
>
> . . .
>
> Some cases talk in terms of estoppel instead of waiver or failure to disclaim, but all reach the same conclusion: *an insurer cannot change its mind after having tried*

275

*and lost a case which it tried under an assurance of coverage.* There is considerable authority to the effect that a liability insurer, by assuming the defense of an action against an insured, is thereafter estopped to claim that the loss resulting to the insured from an adverse judgment is not within the coverage of the policy. *See* Appleman's *Insurance Law and Practice,* § 4692. This is based on the premise that assumption of the insured's defense or unreasonable delay in asserting a defense to coverage clearly prejudices the insured.

*Id.* at 313 (emphasis added).

¶ 84. Arnold P. Anderson relied on both of the above cases in his treatise discussing waiver or estoppel of coverage defenses as a result of an insurer's failure to issue a reservation of rights letter. Anderson explained the rule thus:

While an insurance company may have a valid basis for refusing to defend, if it employs an attorney to represent the insured with no denial of liability or no attempt to reserve its rights under the policy, the insurance company may be deemed by its conduct to have waived its right to raise the policy defense of noncoverage.

Anderson, *Wisconsin Insurance Law* § 7.91, at 83.

¶ 85. These authorities address the precise situation presented here and provide the remedy to which the District is entitled in this case: CIC cannot deny coverage under these circumstances. The majority tries to minimize the significance of *Pouwels* and *Koehring* on the basis that, according to the majority, waiver and estoppel could never be used to create or expand coverage where none exists. At the heart of the majority's erroneous interpretation of the law is a misunderstanding of how waiver and estoppel operate in insurance cases.

276

¶ 86. The majority concludes that waiver and estoppel may never apply to coverage clauses, because doing so would impermissibly expand coverage. To the contrary, our precedent provides that for certain conduct, applying waiver or estoppel does not expand coverage, but rather provides a just remedy for an insurer's prejudicial actions. *Pouwels, Koehring,* and the treatises cited explain that an insurer's conduct—breaching its duty to defend or duty of good faith or prejudicing the insured in litigation as CIC did in this case—may make it liable for an insured's losses, no matter what coverage defenses the insurer may have. The majority's conclusion that the "general rule" precludes applying waiver or estoppel to coverage clauses relies on case law involving conduct that is distinct from the precise conduct at issue here.

¶ 87. The majority distinguishes *Pouwels* and *Koehring* primarily because they do not conform to what the majority asserts is the "general rule" provided in *McCoy v. Northwestern Mutual Relief Association,* 92 Wis. 577, 66 N.W. 697 (1896), *Ahnapee & Western Railway Company v. Challoner,* 34 Wis. 2d 134, 148 N.W.2d 646 (1967), and *Shannon,* 150 Wis. 2d 434, that waiver or estoppel apply only to forfeiture and not coverage clauses. However, none of these cases address the precise situation presented in this case.

¶ 88. The doctrines of waiver and estoppel were addressed in *McCoy* regarding whether, despite a suicide exclusion, the insured, William McCoy (McCoy), was covered for his death by suicide based on the representations of the insurer, Northwestern Mutual Relief Association (Northwestern Mutual). 92 Wis. at 578–80. Specifically, McCoy's beneficiary asserted that Northwestern Mutual should be estopped from denying coverage because it represented to McCoy, prior to his

death, that death by suicide was covered by the policy. *Id.* This court concluded that neither waiver nor estoppel was applicable to the suicide exclusion in this context. The court distinguished between forfeiture clauses that can be waived and coverage clauses that cannot be waived. *Id.* at 584–85.

¶ 89. In *Ahnapee,* the insured, Ahnapee & Western Railway Company (Ahnapee), sought reformation of the insurance contract based on mutual mistake regarding the policy limits. 34 Wis. 2d at 137. Ahnapee also argued that, even if the contract were not reformed, the insurer, Employers Mutual Liability Insurance Company (Employers), should be estopped from denying coverage because an agent of Employers represented to Ahnapee that Employers covered the same risks as another insurance policy held by Ahnapee, which did provide coverage. *Id.* at 136–39. This court held that waiver or estoppel could not be used to expand the coverage clause beyond that provided in the policy simply based on Employers' representations to Ahnapee. *Id.* at 140–44.

¶ 90. Unlike this case, *McCoy* and *Ahnapee* addressed the applicability of waiver or estoppel based on an insurer's representations to its insured *before* the litigation, or even before the incident giving rise to the litigation. Here, waiver or estoppel is invoked based on CIC's conduct during litigation to control the District's defense throughout litigation without issuing a reservation of rights, and resulting in an adverse judgment. As discussed in *Pouwels* and *Koehring,* applying waiver or estoppel to any coverage defenses later asserted by the insurer is warranted based on such conduct.

¶ 91. The *Shannon* Court addressed several issues, and relevant here is the argument by the insureds, the Shannons, that their insurer, United States

Automobile Association (USAA), waived the family member exclusion by failing to refer to that exclusion (1) in its answer, and (2) in the nonspecific reservation of rights letter that it sent to the Shannons. 150 Wis. 2d at 437, 450. The underlying negligence action was brought against the Shannons and their insurer, USAA, on behalf of the Shannons' daughter for injuries that she suffered when she nearly drowned in a lake. *Id.* at 438–39. USAA provided counsel for itself and the Shannons, issued a reservation of rights letter, and moved for a bifurcated trial, in order to resolve the coverage issues before any trial on liability. *Id.* at 439, 450. Under these facts, this court concluded that *Ahnapee* and *McCoy* controlled and prohibited the use of waiver to defeat the insurer's defense based on the family member exclusion. The *Shannon* court's discussion of waiver and estoppel is not particularly helpful here because *Shannon* is distinct from this case in two key respects: (1) USAA did issue a reservation of rights letter to the Shannons, and (2) there had not been any liability determination or adverse judgment against the Shannons prior to the coverage dispute and determination.

¶ 92. It is consistent with our case law and also consistent with sound public policy to apply waiver or estoppel where an insurer controlled the insured's defense throughout litigation without issuing a reservation of rights, and resulting in an adverse judgment. As explained in *Koehring:*

> [I]t is a strong policy of [Wisconsin] that an insurer should not be able to purport to provide coverage and then escape liability when a claim is made for reimbursement. A fortiori, an insurer should not be allowed to escape liability where it attempts to tie the hands of its insured, claiming to have the exclusive right to control an insured's defense under the pretense that

the policy provides coverage of all claims, and then when the cause is determined against it, insist that upon closer reading or upon some public policy ground the insured ought to be liable for at least part of the damages awarded.

564 F. Supp. at 312 (emphasis added).

¶ 93. In this situation, prejudice to the insured may be presumed for a number of reasons. "Prejudice is presumed because the insurer has taken away from the insured innumerable rights associated with the control of the defense, including the choice of trial by judge or jury; the ability to negotiate a settlement; and the ability to decide when and if certain defenses or claims will be asserted." *Id.* at 313. Additionally, it is difficult to later quantify all of the ways in which an insurer's control of the insured's defense might have prejudiced the insured. The District conducted its defense through the attorney provided by CIC with the understanding that CIC would not later dispute coverage. It is difficult to say what avenues the District would have taken had it known that CIC planned to dispute coverage after the liability trial. For this reason, as well as the myriad rights affected when an insurer controls an insured's defense, it should be presumed that the District was prejudiced by CIC's control of its defense, without a reservation of rights, throughout litigation that resulted in an adverse judgment.

¶ 94. For the reasons set forth herein, I respectfully dissent.

¶ 95. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.