*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS HOEKSTRA,

      Plaintiff-Appellant,

v

OTTAWA KENT INSURANCE AGENCY, INC.,

      Defendant-Appellee.

UNPUBLISHED
November 21, 2023

No.  364241
Ottawa Circuit Court
LC No.  22-006756-CK

Before:  LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Plaintiff, Thomas Hoekstra, appeals by right the trial court's order granting summary disposition in favor of defendant, Ottawa Kent Insurance Agency, Inc. (OKIA), in this case involving claims by Hoekstra that OKIA was negligent, committed a breach of contract, and made misrepresentations in relation to its alleged failure to follow Hoekstra's directive to procure an insurance policy covering, along with a condominium in Michigan, a mobile home located in Florida. OKIA, an independent insurance agency, did secure a homeowner's policy for Hoekstra on the condominium that was issued by Auto-Owners Insurance Company, but it failed to make sure that the policy also included liability coverage on the Florida property. Hoekstra's sister-in-law, Joyce Hoekstra, fell and broke her hip when walking down three steps during a stay at the Florida mobile home, leading her to file suit against Hoekstra in Michigan and obtain a default judgment in the amount of $358,736.25.[1] Hoekstra, who intentionally did not file an answer to Joyce's complaint at the direction of his brother (Joyce's husband), then filed this action against OKIA to recover monies that he owed under the default judgment, although no collection efforts had been initiated by Joyce. Counsel for Joyce in the personal injury case represented Hoekstra in

---

[1] The mobile home in Ft. Myers, Florida, had a lanai—a room connected to the mobile home and separated by a sliding door. There were three steps to ascend when walking from the lanai up into the mobile home. During a visit, Joyce and her husband were sleeping in the lanai at night when Joyce got up to use the bathroom located inside the mobile home, traversing up the three steps without incident. But on her return from the bathroom back to the lanai, she took a misstep and fell when walking down the steps.

-1-

the instant suit against OKIA. The trial court dismissed the contract count because the gravamen of the allegations sounded in tort, dismissed the misrepresentation count because there was no reasonable reliance on any representation that coverage would be extended to the Florida property given that Hoekstra was sent and had access to a declarations page showing the contrary, and dismissed the negligence count because Hoekstra's failure to respond to Joyce's lawsuit was an intervening, superseding cause of his damages, cutting off any liability by OKIA. On appeal, Hoekstra only challenges the summary dismissal of his negligence and misrepresentation claims, which the trial court dismissed under MCR 2.116(C)(10). We affirm.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court set forth the guiding principles in analyzing a motion brought pursuant to MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).
>
> A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

We first examine the dismissal of Hoekstra's negligence claim. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages,

and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

The trial court summarily dismissed the negligence claim because Hoekstra could not, as a matter of law, establish the element of causation. The trial court effectively concluded that Hoekstra's decision not to oppose Joyce's suit and to allow entry of the default judgment at the urging of his brother constituted an intervening and superseding cause of Hoekstra's damages—his liability on the default judgment.[2] With respect to causation, our Supreme Court in *Ray v Swager*, 501 Mich 52, 63-64; 903 NW2d 366 (2017), observed:

> Proximate cause, also known as legal causation, is a legal term of art with a long pedigree in our caselaw. Proximate cause is an essential element of a negligence claim. It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. Courts must not conflate these two concepts. We recognize that our own decisions have not always been perfectly clear on this topic given that we have used "proximate cause" both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation. All this broader characterization recognizes, however, is that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked. If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue. [Quotation marks and citations omitted.]

Circumstantial evidence and reasonable inferences arising from the evidence can be utilized to establish causation. *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). It is not sufficient to proffer "a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id*. at 164. A "plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's

---

[2] We note that Hoekstra presented evidence that OKIA's employee, Susan Rainey, had promised Hoekstra, consistent with an earlier policy issued by Auto-Owners on a different condominium, that the policy on the new condominium would also extend liability coverage on the mobile home in Florida. Hoekstra testified that Rainey acknowledged that she had " 'mess[ed] up.' " Hoekstra also presented evidence that he asked OKIA to defend him in Joyce's lawsuit, but that OKIA had refused. Hoekstra additionally submitted evidence that OKIA checked with Auto-Owners to see if the liability coverage could be added post-accident and then backdated to cover Joyce's injuries. Auto-Owners, however, refused to backdate any liability coverage, although the coverage on the Florida property was added to the policy a couple of months after the accident.

injuries would not have occurred." *Id*. at 164-165. "[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Id*. at 174. The *Skinner* Court further explained that " '[t]he evidence need not negate all other possible causes' " and that absolute certainty relative to causation is not required. *Id*. at 166, quoting 57A Am Jur 2d, Negligence, § 461, p 442. "Normally, the existence of cause in fact is a question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court." *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009).

Causation is shown by an act or a failure to act that in its natural and continuous sequence—unbroken by any unforeseen intervening and superseding cause—produces an injury that otherwise would not have occurred. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 157-158; 871 NW2d 530 (2015). An "intervening cause" is a cause that actively operates to produce harm to another after the actor's negligent omission has been committed. *Id.* " 'An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was 'reasonably foreseeable.' " *Id.* at 158, quoting *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985).

Proceeding on the assumption that OKIA was negligent for failing to secure liability insurance on the Florida property as part of the condominium policy, the question becomes whether there exists a genuine issue of fact regarding whether this negligence caused Hoekstra's injury, i.e., being personally liable for $358,736.25 in damages under the default judgment. If OKIA had procured an insurance policy for Hoekstra that covered the Florida property, Auto-Owners, by contract, would have launched a defense against Joyce's action and would have been required to indemnify Hoekstra if Joyce were successful in the litigation. Presumably, Auto-Owners would not have allowed entry of a default judgment. OKIA's negligence in failing to obtain a policy encompassing the mobile home, *standing alone*, did not and could not cause harm to Hoekstra, considering that had there been no incident on his property, no liability or potential liability would have arisen. Only when the negligence is considered in conjunction with the injurious event on the premises did the possibility arise that OKIA's negligence could cause Hoekstra to suffer damages in the form of having to pay compensation to Joyce.

Hoekstra constructs an argument based on an analogy to situations in which an insurer fails to comply with its duties to defend and indemnify an insured. In *Andrew v Century Surety Co*, 134 F Supp 3d 1249, 1255 (D Nev, 2015), the federal district court observed:

> The insurer's duty to defend "is of vital importance to the insured." *Amato v Mercury Cas Co*, 53 Cal App 4th 825, 832; 61 Cal Rptr 2d 909 (1997); see also *Dewitt Constr Inc v Charter Oak Fire Ins Co*, 307 F3d 1127, 1137 (CA 9, 2002) ("The duty to defend is one of the main benefits of the insurance contract.") (quotation omitted). "The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability." *Amato*, 53 Cal App 4th at 832 (quotation omitted). When the insurer breaches the duty to defend, a default judgment is a reasonably foreseeable result because, in the ordinary course, when an insurer refuses to defend its insured, a probable result is that the insured will default. See *Hamlin Inc v Hartford Accident & Indemnity Co*, 86 F3d 93, 94 (CA 7, 1996) ("An insurance

-4-

company that refuses a tender of defense by its insured takes the risk not only that it may eventually be forced to pay the insured's legal expenses but also that it may end up having to pay for a loss that it did not insure against. If the lack of a defender causes the insured to throw in the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting judgment or settlement even if it can prove lack of coverage."); *Delatorre v Safeway Ins Co*, 370 Ill Dec 880; 989 NE2d 268, 276 (2013) (stating a default judgment against the insured was "the natural consequence of his insurer's breach of contract"); *Maxwell v Hartford Union High Sch Dist*, 341 Wis 2d 238; 814 NW2d 484, 496 (2012) (stating that one form of damages that "naturally flow[s] from an insurer's breach of its duty to defend" is "the amount of the judgment or settlement against the insured plus interest," because this is a "measure of damages actually caused by an insurer's breach of the contractual duty to defend") (quotation omitted); *Amato*, 53 Cal App 4th at 834 ("When the insurer refuses to defend and the insured does not employ counsel and presents no defense, it can be said the ensuing default judgment is proximately caused by the insurer's breach of the duty to defend.") (emphasis omitted). [Alteration in original. [3]]

There is, of course, a difference between the circumstances presented in this case and a "duty to defend" case. The duties to defend and to indemnify an insured are contractual, stemming from standard language contained in an insurance policy. See *Allstate Ins Co v Freeman*, 432 Mich 656, 701-702; 443 NW2d 734 (1989). In this case, OKIA is not an insurance company; it is an independent insurance agency. Auto-Owners was the insurer under the condominium policy that did not include liability coverage on the mobile home in Florida. OKIA had no contractual duty, and would never have had a contractual duty, to defend and indemnify Hoekstra. Indeed, had OKIA, motivated by its own interests, attempted to interject itself into the litigation initiated by Joyce in order to defend Hoekstra, Hoekstra would have been entirely free to block the move, unconstrained by contractual policy requirements and obligations, although he insisted that he wanted OKIA to defend him.

We conclude that in the context of the particular circumstances of this case and the damages claimed by Hoekstra, factual or "but for" causation required proof of an actual substantive determination that Hoekstra was liable in the premises liability suit or, arguably, evidence that demonstrated more likely than not that Joyce would have succeeded in her suit had it gone to trial.

---

[3] We note that the *Andrew* court also stated:

> Many jurisdictions hold that when an insurer has notice of the lawsuit against its insured and breaches its duty to defend, it is bound by the resulting judgment, default judgment, or settlement, in the absence of fraud or collusion, with respect to all material findings of fact necessary to the judgment or settlement. This is a consequence of the insurer's breach of the duty to defend. [*Andrew*, 134 F Supp 3d at 1260-1261.]

Although a default judgment is treated as a judgment on the merits for purpose of res judicata analysis, *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006), which is not relevant here, there was no actual or true substantive determination of liability. Hoekstra was not free to simply do nothing and allow the default judgment to enter just because his brother told him to do so and then turn around and try to recover the amount of the judgment from OKIA on the basis that OKIA's negligence caused the entry of the default judgment and Hoekstra's damages. There is no indication that Hoekstra did not defend against his sister-in-law's action because of poverty, an inability to find or retain counsel, or some other reasonable excuse. Hoekstra's conduct in intentionally permitting entry of the default judgment because of his brother's directive can accurately be characterized as an intervening and superseding cause of his personal liability on the judgment given that the failure to defend against the lawsuit for that particular reason was not reasonably foreseeable. Our reasoning is further supported by Michigan's common-law rule that requires an injured party in a contract or tort action to mitigate his or her damages. *Meemic Ins Co v Fortson*, 506 Mich 287, 300; 954 NW2d 115 (2020). Hoekstra made no such effort despite a reasonable opportunity to do so.[4]

Regardless of the fact that Hoekstra allowed the default to occur, one could argue that if there was evidence showing more likely than not that Joyce would have been successful upon fully litigating her premises liability suit,[5] factual causation could potentially be demonstrated, thereby saving Hoekstra's action against OKIA. We acknowledge that this requires speculation and creates a suit-within-a-suit approach akin to the approach that at times must be taken in legal malpractice actions relative to causation. See *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586-587; 513 NW2d 773 (1994). To the extent that we must speculate to properly resolve this case, we find as a matter of law that Joyce's lawsuit was untenable and would likely have failed had a defense been presented. The evidence was not sufficient to create a genuine issue of material fact regarding whether it was more likely than not that Joyce would have succeeded in her suit against Hoekstra had it been fully litigated.

We believe that summary disposition would have been justified in Joyce's action on the basis of the open and obvious danger doctrine, as it existed at the time of the lawsuit, and the fact that Joyce had actual knowledge of the alleged hazard, having confronted it when entering the

---

[4] We note that with respect to the default judgment, $103,543.71 covered medical bills, $250,000 was for noneconomic damages, and the remainder of the judgment pertained to interest and costs.

[5] The parties disputed whether Joyce's lawsuit constituted a premises liability action or an ordinary negligence suit. It is clear to us that Joyce's action had a real relationship to the premises and concerned a condition of the land—i.e., alleged hazardous steps, primarily when unlit or unilluminated and used at night as necessary to access the bathroom in Hoekstra's mobile home from the lanai. See *Ruiz v Wendy's Trucking, LLC*, 357 So3d 292, 300 (Fla App, 2023) (an action for ordinary negligence has no real relationship to the premises); *Wilson v BRK, Inc*, 328 Mich App 505, 512; 938 NW2d 761 (2019) ("If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence[.]"). Accordingly, we conclude that Joyce pursued a premises liability action against Hoekstra.

mobile home.[6]  And even if she would have survived a motion for summary disposition, a jury, in our view, would not have rendered a verdict in Joyce's favor whether under Michigan or Florida law.[7]  As reflected in her deposition testimony, Joyce did not fall because of any defect in the steps themselves; rather, she fell because she thought that she had reached the lanai's floor when in fact she still had one more step to go.  The alleged failure to provide adequate lighting is unpersuasive,

---

[6] See *Pozanco v FJB, 6501, Inc*, 346 So3d 120, 124 (Fla App, 2022) (some conditions can be so obvious and not inherently dangerous that they, as a matter of law, do not constitute a dangerous condition and will not give rise to liability; under the open and obvious doctrine, a possessor of land is not liable to persons for physical harm caused to them by a condition on the land whose danger is known or obvious to them); *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001) (a premises possessor does not have a duty to protect a person from an open and obvious danger unless there exists special aspects of the condition that make the open and obvious risk unreasonably dangerous), overruled by *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023); slip op at 2; see also *Hoffner v Lanctoe*, 492 Mich 450, 475; 821 NW2d 88 (2012) (our Supreme Court has repeatedly stated that an ordinary flight of stairs do not give rise to liability for a premises owner).  *Lugo* and *Hoffner* were the law in Michigan at the time of Joyce's litigation.  On the choice of law issue raised by the parties, because the alleged defective premises at issue are located in Florida, giving Florida a strong interest to have Florida law apply, and because Michigan's interest was tenuous at best, we believe that Florida premises liability law would have applied to Joyce's lawsuit.  See *Sutherland v Kennington Truck Serv, Ltd*, 454 Mich 274, 286; 562 NW2d 466 (1997); *Olmstead v Anderson*, 428 Mich 1, 28; 400 NW2d 292 (1987).  Ultimately, we conclude that Joyce's suit was likely to fail regardless of whether Michigan or Florida law applied.

[7] The Florida Supreme Court in *Wood v Camp*, 284 So2d 691, 695 (Fla, 1973), ruled that licensees by express or reasonably-implied invitation are entitled to reasonable care under the surrounding circumstances, thereby eliminating a distinction that had existed between commercial visitors and social guests and applying to both the single standard of reasonable care.  See also *Bryan v Galley Maid Marine Prod, Inc*, 287 So3d 1281, 1286 (Fla App, 2020).  This standard of care encompasses a duty to use reasonable care in maintaining property in a reasonably safe condition and a duty to warn of concealed dangers of which a landowner had actual or constructive knowledge but that were unknown to the invitee and could not have been discovered by the exercise of due care. *Ruiz v Wendy's Trucking, LLC*, 357 So3d 292, 301-302 (Fla App, 2023).  In *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 627-628; 971 NW2d 716 (2021), this Court addressed Michigan law regarding licensees such as social guests like Joyce:

> A licensee is a person who enters the land of another by the consent of the property possessor.  This category includes social guests.  A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved.  A possessor of land does not owe a duty to a licensee to inspect or to repair to make the premises safe for the licensee's visit. [Quotation marks and citations omitted.]

as the accident happened in the middle of the night in an area where Joyce and her husband were sleeping, and Hoekstra definitively testified that there was a ceiling light and a lamp light in the lanai, along with some nightlights, that could have been used. Joyce successfully traversed the steps in the process of going into the mobile home where the bathroom was located; she knew that she needed to be careful; and she chose not to use her cell phone to light her path. Joyce also testified that some light from the mobile home reached the lanai. There simply was no viable premises liability action. Minimally, Hoekstra did not present evidence sufficient to create a genuine issue of material fact regarding whether it was more likely than not that Joyce would have succeeded in her suit against Hoekstra had the case gone to trial. In sum, we hold that the trial court did not err by summarily dismissing Hoekstra's negligence claim because of a failure to submit adequate evidence of causation.[8]

With respect to the misrepresentation count in Hoekstra's complaint, our ruling on causation relative to the negligence claim applies equally to the misrepresentation claim, as does our concern about damages. A plaintiff claiming actual fraud, or fraudulent misrepresentation, must establish the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false when it was made,

---

[8] Although not an issue broached by the parties, we also struggle to find that Hoekstra actually incurred damages in this case. In his complaint, Hoekstra's only claim of damages pertained to his liability under the default judgment to pay Joyce $358,736.25. Joyce, however, has made no attempt whatsoever—through garnishment, attachment, or otherwise—to enforce, collect on, or execute the judgment. According to Joyce's deposition testimony, she has made no decision regarding whether she intends to enforce the default judgment against Hoekstra; a decision that she purportedly will make after this litigation has been fully completed. We find telling Joyce's recalcitrance to even express or suggest that she would initiate execution on the judgment should Hoekstra lose the suit against OKIA. And Hoekstra's deposition testimony revealed that he has no concerns whatsoever that Joyce will seek to collect on the judgment and go after his property interests. The coziness of the relationship between Hoekstra, Joyce, and Joyce's husband (Hoekstra's brother), the circumstances surrounding the two lawsuits, and the testimony by Hoekstra and Joyce, including their statements effectively demonstrating a shared goal of having OKIA pay the default judgment, leaves us with a powerful impression that Joyce has no intention to ever make her brother-in-law pay a dime toward the default judgment. Hoekstra did not submit any evidence suggesting that Joyce would hold him accountable relative to satisfaction of the judgment. See *Stockdale v Jamison*, 416 Mich 217, 226-228; 330 NW2d 389 (1982) (ruling that an insurer's liability for breach of its contractual duty to defend the insured, who suffered a default judgment in favor of his assignees in an action arising from automobile accident, was limited to the amount equal to the insured's assets that were not exempt from legal process). *Stockdale* indicates that if a party is deprived of the protection afforded by insurance coverage, that party can only recover at most the amount that he or she must actually pay on an underlying default judgment entered against him or her. Absent evidence that Joyce has the intent to enforce the judgment, it is certainly arguable that Hoekstra has no damages, which is of course a required element of his cause of action. The fact that Joyce has damages that she would like to recover from OKIA is not pertinent; she is not the plaintiff in this case.

-8-

or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation. *Hord v Environmental Research Institute of Mich (After Remand)*, 463 Mich 399, 404; 617 NW2d 543 (2000); *M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). "In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Barclae v Zarb*, 300 Mich App 455, 479; 834 NW2d 100 (2013) (quotation marks and citation omitted).

We agree with OKIA that Hoekstra presented absolutely no evidence of a misrepresentation by Susan Rainey or any other OKIA agent or employee.[9] In *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 444; 505 NW2d 275 (1993), this Court recognized the distinction between fraud or misrepresentation and a broken promise:

> Plaintiff also claimed misrepresentation. An action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact. A mere broken promise does not constitute fraud, nor is it evidence of fraud. None of the statements allegedly made . . . related to "past or existing" facts. They were all future promises and thus were contractual and cannot be the basis of an action for fraud. [Citations omitted.]

In this case, there was evidence that Hoekstra informed Rainey that he wanted the same coverage on the condominium that already existed on his other condominium,[10] which included liability coverage on the Florida property, that Rainey acknowledged the request, that she agreed to handle the matter, and that Rainey admitted that she messed up by failing to procure a similar policy. There was no evidence of a misrepresentation predicated on a statement of a past or existing fact. Hoekstra did not testify that Rainey informed him that the insurance policy actually included liability coverage on the mobile home in Florida or that she made a change to include the coverage; rather, Hoekstra's testimony simply established promises by Rainey to secure a policy covering the Florida property that she eventually did not fulfill. This was not a case of fraud; at most, Hoekstra merely showed a broken promise.

We appreciate that Michigan recognizes "fraud in the inducement," which does not require a misstatement relating to a past or an existing fact, but can be established when a party materially

---

[9] OKIA did not pose this argument below; therefore, it is unpreserved and potentially subject to a finding of waiver. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3. We, however, choose to exercise our discretion and address the issue because it involves a question of law and the facts necessary for its resolution were presented. *Id*.

[10] A sale and closing on this other condominium, where Hoekstra and his wife used to reside, occurred before the fall, resulting in the cancellation of the policy on that condominium, which policy had provided for liability coverage on the mobile home in Florida.

misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied on and indeed are relied on. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006). Hoekstra, however, never framed a claim or argument premised on fraud in the inducement. Moreover, there was no evidence suggesting or indicating that Rainey made the promise to obtain a similar policy with the requisite fraudulent intent to induce Hoekstra to enter into a contract. *Id.* at 243.

Additionally, Hoekstra's misrepresentation claim fails even if we assume that Rainey made a "representation" that was potentially actionable. A party's "reliance" on a misrepresentation in fraud actions must be reasonable. *Bergen v Baker*, 264 Mich App 376, 388; 691 NW2d 770 (2004); *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 690-691; 599 NW2d 546 (1999) (a person who unreasonably relies on false statements is not entitled to damages for misrepresentation). The *Novak* panel ruled that the plaintiff's alleged reliance on oral statements that were expressly contradicted by a written contract was unreasonable. *Novak*, 235 Mich App at 689. And "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v First of Mich Corp*, 195 Mich App 470, 474; 491 NW2d 851 (1992). Fraud cannot be "perpetrated upon one who has full knowledge to the contrary of a representation." *Montgomery Ward & Co v Williams*, 330 Mich 275, 284; 47 NW2d 607 (1951). Our Supreme Court has indicated that "[o]ne is presumed to have read the terms of his or her insurance policy[.]" *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 415; 751 NW2d 443 (2008).

To overcome the principles enunciated in the preceding paragraph, Hoekstra argues that the declarations page and insurance policy did not "expressly contradict" Rainey's oral statements, that he was confused because he received multiple declarations pages, some of which referenced coverage on the mobile home and some that did not, and that he lacked the means to determine the accuracy of Rainey's statements because notices were going to the address of the condominium in which he no longer resided. Assuming for the sake of argument that an "express contradiction" was necessary but not found in the insurance documents, that Hoekstra was confused by the multiple policies, and that he did not receive notices because of the two addresses,[11] all of the documents were "available" to Hoekstra by visiting OKIA, as he had done earlier, or by making a request to OKIA. And there was no evidence that OKIA prohibited him from accessing the documents. In sum, we hold that Hoekstra's misrepresentation claim fails as a matter of law. Accordingly, the trial court did not err by dismissing the misrepresentation count.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

---

[11] We are being overly generous with these assumptions because Hoekstra testified that he received the insurance policies and had no reason to believe that he did not receive the declarations page that did not reference the mobile home in Florida. He also made clear that he would not have read any of these insurance documents.

-10-